UNITED STATES of America, Plaintiff,

v.

Dale F. STEURER, Defendant.

No. 96 CR 50020.

United States District Court,
N.D. Illinois,
Western Division.

Sept. 30, 1996.

Daniel J. Cain, Robert R. Wilt and Deron R. Benson, Sreenan & Cain, P.C., Rockford, IL, for Defendant.

Scott A. Verseman, U.S. Attorney's Office, Rockford, IL, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

Defendant, Dale F. Steurer, is charged in an eleven-count indictment with four counts of making false statements of material fact to an institution, the accounts of which are insured by the Federal Deposit Insurance Corporation, for the purpose of influencing action of such institution upon a loan in violation of 18 U.S.C. § 1014 and with seven counts of willfully misapplying money belonging to, and intrusted to the care and custody of, such institution with the intent to injure and defraud in violation of 18 U.S.C. § 656. Consolidated for purposes of this opinion are defendant's Motion to Dismiss: Statute of Limitations, which seeks dismissal of Counts I, II, and III, defendant's Motion to Dismiss Counts I, III, IV, VI, VII, IX, X and XI of the indictment and defendant's Motion for Further Discovery.

### I. Motion to Dismiss: Statute of Limitations

Defendant initially moved to dismiss Counts I, II and III on the basis that those counts were brought after the expiration of the five-year statute of limitations set forth at 18 U.S.C. § 3282. In its response, the government points out that section 3282 is not applicable to the offenses alleged in Counts I, II and III, rather, the applicable statute of limitations is found at 18 U.S.C. § 3293, which provides for a ten-year period. In his consolidated reply, defendant appropriately concedes that section 3293 is the applicable statute of limitations and moves to withdraw the motion to dismiss these counts on the basis of the statute of limitations. The court, therefore, deems this motion withdrawn.

### II. Motion to Dismiss Counts I, III, IV, VI, VII, IX, X and XI

Defendant moves to dismiss Counts I, IV, VII and X, each alleging a violation of 18 U.S.C. § 1014, on the basis of duplicity in that each count alleges that defendant made four separate false statements, each of which constitutes a separate violation of section 1014. Each count alleges that defendant prepared a promissory note which contained a fictitious borrower's name, taxpayer identi-

fication number, address and purpose for borrowing the funds. Defendant contends that these counts expose him to the risk of being convicted on less than unanimous verdicts.

Similarly, defendant moves to dismiss Counts III, VI, IX and XI, each alleging a violation of 18 U.S.C. § 656, on the basis of duplicity in that each count alleges that defendant violated section 656 by alternative means. Defendant contends that section 656, which punishes one who "embezzles, abstracts, purloins or willfully misapplies any of the moneys, fund or credits" of a protected institution or "any moneys, funds, assets or securities intrusted to the custody or care" of such an institution, can be violated in at least twelve different ways.[1] Because each count tracks the language of section 656, defendant contends that each count, in essence, alleges twelve alternative violations of section 656. Defendant contends that these counts do not give him adequate notice of the charges against him and that these counts expose him to the risk of being convicted on less than unanimous verdicts.

▪ Duplicity is the "joining of two or more offenses in a single count." *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir.1996). The adverse effects a duplicitous count can have on a defendant include "improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense." *Id.; see also United States v. Kimberlin*, 781 F.2d 1247, 1250 (7th Cir.1985), *cert. denied*, 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986). Defendant's motion raises concerns with respect to notice and verdict unanimity.

▪ Duplicity is not always fatal to an indictment, as corrective instructions and other measures can cure any prejudice that might exist. *See, e.g., Kimberlin*, 781 F.2d at 1251. Nonetheless, the court must first de-termine whether the counts at issue are duplicitous. Duplicity exists if a count contains "more than one distinct and separate offense." *United States v. Berardi*, 675 F.2d 894, 897 (7th Cir.1982). It does not exist if the count merely charges the "commission of a single offense by different means." *Id.; see also United States v. Kramer*, 711 F.2d 789, 797 (7th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983). Rule 7(c) of the Federal Rules of Criminal Procedure specifically permits a count to allege that the offense was committed by "one or more specified means." Rule 7(c) has been interpreted to contemplate the joining of two or more acts, each one of which would constitute a violation of the same offense standing alone, without offending the rule against duplicity. *Berardi*, 675 F.2d at 898. While it is often a fine line to draw, a count is not duplicitous where it alleges multiple acts, which independent of each other constitute separate violations of the same statute, if the multiple acts are part of a continuing course of conduct. *Id.; see also United States v. Bruce*, 89 F.3d 886, 890 (D.C.Cir.1996) (involving a bank fraud scheme comprised of several transactions); *United States v. Shorter*, 809 F.2d 54, 57 (D.C.Cir.), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987) (involving an ongoing scheme to evade taxes).

▪ As to Counts I, IV, VII and X, each count alleges that the different promissory note referred to in each count contained four separate false statements. Clearly, each false statement, by itself, violates section 1014. This fact alone, however, does not make these counts duplicitous. Each count concerns a single transaction and document. At least three circuit courts of appeal to confront this issue have found that the making of multiple false statements to a lending institution in a single document constitutes only one criminal violation under section 1014. *See, e.g., United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C.Cir.1982); *United States v. Sue*, 586 F.2d 70, 71 (8th Cir.1978);

---

1. The different methods defendant refers to are the following: (1) embezzling money; (2) embezzling funds; (3) embezzling credits; (4) embezzling assets; (5) abstracting money; (6) abstract-ing funds; (7) abstracting credits; (8) abstracting assets; (9) purloining money; (10) purloining funds; (11) purloining credits; and (12) purloining assets.

United States v. Sahley, *526 F.2d 913, 918 (5th Cir.1976). Thus, in those circuits, the government would be precluded from proceeding on an indictment which divided each false statement into a separate count. The First Circuit has taken a slightly different approach and found that no duplicity existed where the false statements were interrelated and each was required to complete the loan transaction.* See United States v. Canas, *595 F.2d 73, 78–79 (1st Cir.1979).*

■ The Seventh Circuit has not addressed this issue in the context of section 1014. It has, however, addressed the issue in the context of other criminal statutes. *See Berardi,* 675 F.2d at 898. In *Berardi,* the Seventh Circuit held that it was permissible to join three acts, each of which could have constituted independent violations of 18 U.S.C. § 1503 (obstruction statute), in one count where the conduct could fairly be characterized as a single, continuing offense. *Id.* The court also noted that the joining of multiple acts in one count is, in part, a practice which is left to the discretion of the prosecution. *Id.* (citing *United States v. Alsobrook,* 620 F.2d 139, 142 (6th Cir.), *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980); *United States v. Tanner,* 471 F.2d 128, 138 (7th Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972)). Of course, this discretion is not without limits, as the indictment must eventually be measured in terms of whether it exposes a defendant to any of the inherent dangers of a duplicitous indictment. *Alsobrook,* 620 F.2d at 142.

This court need not go so far as the Fifth, Eighth and D.C. Circuits and hold that false statements made in connection with one loan transaction can never constitute more than one offense under section 1014; rather, the court need only decide whether it is proper for the government to join four false statements in one count where the false statements were made in the same document and in connection with the same loan. The court concludes that it is proper, as these four false statements are inextricably related and are clearly part of a continuing course of conduct. In fact, they are even more than that, they are actually part of a single course of conduct. In such circumstances, it is entirely appropriate to join the four statements in a single count. The alternative to charging defendant in this manner would have been to charge him with sixteen counts of violating section 1014 instead of with only four. Instead of indicting defendant with a monkey-pile of counts under section 1014, the government reasonably sought an indictment which charges defendant with four violations of section 1014 which correspond with four separate loan transactions. The court cannot conclude that these counts offend the rule against duplicity.

Defendant nonetheless claims that there remains a risk that he could be convicted by a non-unanimous jury verdict, relying on *Bins v. United States,* 331 F.2d 390, 393 (5th Cir.), *cert. denied,* 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964). The holding in *Bins*—that any acts capable of being charged as separate offenses must be alleged in separate counts—is inapposite to the Seventh Circuit's holding in *Berardi,* which held that it was permissible to allege three acts of obstruction in a single count where they occurred in a continuing course of conduct notwithstanding the fact that each act by itself could have constituted an independent violation of the statute. *Berardi,* 675 F.2d at 898; *accord United States v. Aracri,* 968 F.2d 1512, 1518 (2nd Cir.1992) (rejecting *Bins* ). Any risk of a non-unanimous verdict in this case can be cured with a proper jury instruction. *See Berardi,* 675 F.2d at 899.[2] Accordingly, de-

2. The government notes in its response brief that defendant cited no authority for the proposition that a section 1014 verdict must be unanimous on a particular statement and implies that such may not be the case. This court, in a prior opinion, has implied the same in the context of 18 U.S.C. § 1001, *see United States v. Cichon,* No. 95 CR 50055, 1996 WL 328362, at *3 (N.D.Ill. June 13, 1996) (citing *Schad v. Arizona,* 501 U.S. 624, 631–32, 111 S.Ct. 2491, 2496–97, 115 L.Ed.2d 555 (1991); *United States v. Dur-*

*man,* 30 F.3d 803, 810 (7th Cir.1994), *cert. denied sub nom. Castellanos v. United States,* —— U.S. ——, 115 S.Ct. 921, 130 L.Ed.2d 801 (1995)), but the instruction eventually given in that case required unanimity as to at least one act in each count. *Schad* and *Durman* speak to the situation where the statute itself provides for alternative *means* of violating it and those alternative means are alleged in a single count. *See Schad,* 501 U.S. at 636 n. 6, 111 S.Ct. at 2499 n. 6. One analogy offered in *Schad* was an indictment

fendant's motion is denied as to Counts I, IV, VII and X.

▮▮▮ With respect to Counts III, VI, IX and XI, the court has little difficulty in concluding that no duplicity exists in these counts. The fact that each of these counts tracks, in part, the language of section 656 by alleging alternative means of violating the statute does not make each count duplicitous. Charging a defendant with alternative commissions of the same offense in the same count, as distinguished from charging him with alternative offenses, is expressly authorized by Rule 7(c) and does not offend the rule against duplicity. *United States v. Kramer*, 711 F.2d 789, 797 (7th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983); *United States v. Epperson*, 552 F.Supp. 359, 361 (S.D.Ill.1982) (count charging the defendant with misapplying "money, funds, and credits" under section 656 not duplicitous); *see also United States v. Acosta*, 748 F.2d 577, 579 (11th Cir.1984) (count charging the defendant with willfully embezzling, abstracting, purloining and misapplying money under section 656 not duplicitous). Defendant's claim that these counts do not provide sufficient notice of the charges against him is without merit. In addition to alleging various means of commission, each count sets forth in detail that which was embezzled. In Count Three, it is $3,000 in the form of a check made payable to Robert Keister—in Count Six, $5,000, in Count Nine, $5,000 and in Count Eleven, $35,000. Nor is there a risk of a non-unanimous verdict with respect to these counts. Where a statute provides for alternative means of commission and these alternative means are alleged in a single count, the jury need not agree upon the means of commission in rendering a general verdict. *Schad v. Arizona*, 501 U.S. 624, 631–32, 111 S.Ct. 2491, 2496–97, 115 L.Ed.2d 555 (1991); *United States v. Durman*, 30 F.3d 803, 810 (7th Cir.1994), *cert. denied sub nom. Castellanos v. United States*, —— U.S. ——, 115 S.Ct. 921, 130 L.Ed.2d 801 (1995); *Bae v. Peters*, 950 F.2d 469, 480 (7th Cir.1991). Therefore, the court finds that Counts III, VI, IX and XI are not duplicitous. Accordingly, defendant's motion to dismiss is denied.

### III. Motion for Further Discovery

Defendant represents that, after conducting a pretrial conference with the Assistant United States Attorney in this case pursuant to Local Criminal Rule 2.04, the parties could not reach an agreement on certain discovery matters. These discovery matters are the following:

(1) Providing copies of or access to loan files of bank loan officers at First of America Bank similarly situated to the position held by defendant within that institution until January 15, 1993;

(2) Providing copies of or access to files handled by defendant for First of America Bank during all time periods covered by the indictment and the six-month time period preceding the same;

(3) Providing a list of names of any and all bank officers disciplined or fired by First of America Bank for issues regarding failure to properly attend to duties; and

(4) The preservation and production of notes taken by FBI agent Jack Mulvey; specifically, (a) notes taken during the in-

---

charging that a death occurred through both shooting and drowning, to which the Court noted that it has never suggested that jurors, in returning a general verdict, should be required to agree upon a single means of commission. *Schad*, 501 U.S. at 631–32, 111 S.Ct. at 2496–97. These decisions are arguably distinguishable from others in this circuit, which seem to require verdict unanimity where, as here, a defendant is charged with multiple *acts* of violating a statute in a single count. *Cf. United States v. Edmonds*, 80 F.3d 810, 819 (3d Cir.1996) (distinguishing *Schad* in context of 21 U.S.C. § 848). In such circumstances, the Seventh Circuit has approved of requiring a unanimous verdict on at least one act. *See, e.g., Marshall*, 75 F.3d at 1112; *Berar-*

*di*, 675 F.2d at 899; *but see Bae v. Peters*, 950 F.2d 469, 480 (7th Cir.1991). Although the Seventh Circuit has not addressed this issue in the context of section 1014, the D.C.Circuit has confronted this issue and strongly favors the giving of a particularized instruction that requires the jury to be unanimous as to at least one of the alleged false statements where a count charges two or more. *See Mangieri*, 694 F.2d at 1281. Certainly, if *Schad* does not affect this line of cases, then a special instruction on unanimity most likely would be appropriate in this case. The court, however, leaves this issue to be addressed by the parties during the instructions conference at trial.

terviews of William Helfvogt and Sam Caldwell relating to the subject matter of their respective testimony before the grand jury to the extent such notes contain substantially verbatim accounts of their oral statements to agent Mulvey, (b) notes taken during the interviews of Rick Wiermanski and Bryan Selander to the extent that they relate to internal loan policies within First of America Bank and matters related to the probate estate of Ruth Keister, and (c) notes containing the investigative steps followed by agent Mulvey which contain the sources of information, his findings and conclusions to the extent that they relate to the subject matter of agent Mulvey's testimony before the grand jury.

Defendant seeks disclosure of materials described in paragraphs 1–3 on the basis that they are relevant to the issue of guilt at trial (i.e., defendant's mental state) and the issue of mitigation at sentencing. As such, defendant contends that these materials are discoverable under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As to the materials referred to in paragraph 4, defendant seeks disclosure of these materials pursuant to the Jencks Act, 18 U.S.C. § 3500.

In response, the government represents that it does not have in its possession, nor has it reviewed, any of the materials referred to in paragraphs 1–3. The government opposes disclosure of these materials on the grounds that it would require it to affirmatively seek out information that is not in its possession or control. The government contends that *Brady* imposes no such duty. As to the materials referred to in paragraph 4, the government contends that (1) defendant is not entitled to the notes taken during agent Mulvey's interview of the witnesses because defendant has not alleged that any of these witnesses signed or adopted such notes or that agent Mulvey's handwritten notes constitute essentially verbatim accounts of said interviews and (2) defendant's request for agent Mulvey's investigation notes is premature and defendant would not be entitled to such notes at trial unless agent Mulvey testifies to their subject matter and vouches for the veracity of such notes during his testimony. The government further

notes that it has already disclosed all typewritten FBI reports ("302" reports) of interviews that were conducted in this case.

■■■■ The court first addresses the disclosure of the materials referred to in paragraphs 1–3. As properly noted by the government, its obligation to disclose exculpatory or impeaching information under *Brady* is generally limited to information which is known to the government. *United States v. Morris,* 80 F.3d 1151, 1169 (7th Cir.1996). While the prosecutor's office cannot stick its head in the sand about certain aspects of a case or compartmentalize information so that only the investigating officers, and not the prosecutors themselves, are aware of it, nothing in *Brady* can be interpreted as requiring prosecutors to affirmatively seek out information which is not presently in their possession. *Id.; United States v. Romo,* 914 F.2d 889, 898 (7th Cir. 1990), *cert. denied,* 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991). The rule in *Brady* does not apply unless the prosecutor has knowledge of the exculpatory information. *United States v. Moore,* 25 F.3d 563, 569 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 341, 130 L.Ed.2d 297 (1994). The Assistant United States Attorney in this case represents that the government does not possess the materials referred to in paragraphs 1–3 and that he has not reviewed such materials. During a status hearing in this case on September 18, 1996, counsel for defendant stated that he accepts the representation of the Assistant United States Attorney in these respects. The court agrees with the government that because it neither has knowledge nor possession of these materials, it has no obligation under *Brady* to affirmatively seek out this information, which is in the possession of a private entity not part of the "prosecution team." *See Morris,* 80 F.3d at 1169.

■■■■ There is a separate reason why defendant is not entitled to these materials under *Brady.* As the government points out, the government cannot be found to have suppressed material information if that information is also available to the defendant through the exercise of reasonable diligence.

*Morris,* 80 F.3d at 1170. Defendant has not demonstrated that he will not be able to obtain these documents at the time of trial through a trial subpoena. Thus, defendant's failure to show that these documents are unavailable despite the exercise of reasonable diligence is a separate and independent basis to deny his motion to compel disclosure. Accordingly, the motion is denied with respect to the materials referred to in paragraphs 1–3.

▆▆▆▆ Next, the court considers defendant's request for disclosure of agent Mulvey's handwritten notes. As this court has previously noted, a defendant does not have a right to pretrial disclosure of Jencks material under the Jencks Act. *United States v. Drake,* 934 F.Supp. 953, 964–65 (N.D.Ill. 1996). A district court may only order disclosure of such material after a witness called by the government has testified on direct examination at trial. *See* 18 U.S.C. § 3500(b). Nor can defendant seek disclosure of these materials under Rule 26.2 of the Federal Rules of Criminal Procedure, as Rule 26.2 only applies to specified hearings and is not a vehicle for pretrial discovery. *See* Fed.R.Crim.P. 26.2(g). Although it may be beneficial to address these matters prior to trial so as to obviate the need to recess the proceedings at trial, *see* Fed.R.Crim.P. 26.2(d), resolving such matters before a witness has taken the stand and testifies is difficult, if not impossible. Consider the language of the Jencks Act, which defines a statement as any one of the following:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substan-

tially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e). In determining whether material is producible under the Act, the emphasis clearly is on "whether the statement can fairly be deemed to reflect fully and without distortion the witness's own words." *United States v. Morris,* 957 F.2d 1391, 1401 (7th Cir.), *cert. denied,* 506 U.S. 941, 113 S.Ct. 380, 121 L.Ed.2d 290 (1992); *United States v. Allen,* 798 F.2d 985, 994 (7th Cir.1986). A government agent's summary of a witness' oral statement that is not signed or adopted by the witness is not producible. *Allen,* 798 F.2d at 994. The reason for this is that summaries, by their nature, are not "substantially verbatim" recitals and would not constitute a statement as defined by section 3500(e)(2), and absent some kind of adoption by the witness, would not constitute a statement as defined by section 3500(e)(1). Conceivably, when a government agent takes notes during an interview, those notes could contain statements as defined by section 3500(e)(2) if they are "substantially verbatim" even though they are not adopted by the witness, as section 3500(e)(2) contains no requirement that the statement be adopted. *See Campbell v. United States,* 365 U.S. 85, 94, 81 S.Ct. 421, 426, 5 L.Ed.2d 428 (1961).[3] In addition, while a federal agent's written impression of what a witness said, his strategy or his conclusions from what the witness said are not statements of the witness, they might be statements of the agent if the agent

---

**3.** In *United States v. Herrero,* 893 F.2d 1512, 1524 (7th Cir.), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990), the Seventh Circuit found no clear error in the district court's refusal to conduct an in camera review of the agents' notes on the basis that the witness did not adopt or approve of the notes taken. The court of appeals did not have the occasion to address the issue of whether the notes contained a statement as defined by section 3500(e)(2); thus, it is limited to the issue of whether the notes contained a statement as defined by section 3500(e)(1). While the difference between the two subsections has sometimes been blurred in

this circuit, *see, e.g., United States v. Lopez,* 6 F.3d 1281, 1288–89 (7th Cir.1993), the distinction nonetheless has been recognized, *see United States v. Morris,* 957 F.2d 1391, 1402 (7th Cir. 1992). Other circuits have addressed the distinction in more detail. *See, e.g., United States v. Neal,* 36 F.3d 1190, 1198 (1st Cir.1994) (holding that section 3500(e)(2) encompasses a longhand writing which fairly follows the witness' words, subject to minor, inconsequential errors); *United States v. Minsky,* 963 F.2d 870, 875–76 (6th Cir. 1992); *United States v. Pierce,* 893 F.2d 669, 675 (5th Cir.1990).

is a witness and testifies about the subject matter of that report. *Allen,* 798 F.2d at 994.

Generally, if a defendant claims that the documents he seeks are statements as defined by the Act, a presumption arises in favor of the district court conducting an in camera inspection of the documents. In order to trigger this presumption in favor of an in camera inspection, the defendant "need only have a reasonable argument that if the document says what he believes it says, based on the testimony of the witness on direct examination, then it can possibly be used to impeach that witness." *Allen,* 798 F.2d at 995. In addition, before a district court can reach the issue of whether the document is a statement as defined by the Act, it must be requested with sufficient specificity. *Id.* at 996. A defendant can achieve this by establishing (normally by cross-examination of the witness at trial) that a certain document exists, that there is a reason to believe that the document is a statutory statement and that the government failed to provide it. *Id.*

As the foregoing demonstrates, the foundation necessary to compel disclosure of Jencks material, or to at least trigger a presumption in favor of an in camera review, can rarely be established prior to trial—the obvious exception being grand jury testimony of a witness. The reason for this is that a court cannot determine whether a statement is Jencks material prior to trial in most cases without embarking on a safari of speculation as to what a witness will testify to at trial and whether or not, at some point in time in the past, that witness adopted or approved of a specific statement. Defendant's motion calls for just this—speculation as to whether any one of these witnesses adopted agent Mulvey's notes, whether agent Mulvey's notes contain substantially verbatim accounts of these witnesses' oral statements and whether agent Mulvey used notes during his grand jury testimony, testified as to their subject matter and will testify as to their subject matter again at trial. Because defendant's request precedes trial and he has not laid a sufficient foundation, the court denies defendant's motion seeking discovery of these materials. To the extent such notes presently exist, the government is ordered to preserve such notes should an appropriate foundation be established at trial.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss Counts I, III, IV, VI, VII, IX, X and XI is denied. As to Defendant's Motion for Further Discovery, the government is ordered to preserve agent Mulvey's notes, to the extent they exist; defendant's motion is denied in all other respects. Defendant's Motion to Dismiss: Statute of Limitations is withdrawn.