Doerfer, J.
INTRODUCTION
Defendant Harold F. Goodman, an orthopedic surgeon, and defendant Orthopedic Surgery of the South Shore, Inc. stand indicted on multiple counts of violating G.L.c. 118E, §40, the Medicaid False Claims Act. The defendants now move to dismiss the indictments as violative of due process under the Fourteenth Amendment and Article 12 of the Declaration of Rights on the ground that they are based on insufficient evidence, are duplicitous, and deprive them of the right to indictment by grand jury. For the reasons discussed below, the defendants’ motion is DENIED.
BACKGROUND
Each of nineteen indictments against defendant Harold F. Goodman charges that:
on divers dates from on or about August fourteenth in the year of our Lord one thousand nine hundred and ninety-two, through on or about May twelfth in the year of our Lord one thousand nine hundred and ninety-five at Quincy in said County of Norfolk actuated by a continuing criminal intent, being a person who had furnished services for which payment may be made under c. 118E of the General Laws of Massachusetts, did knowingly and wilfully make or cause to be made a false statement or representation of a material fact in one or more applications for payment for services under the said c. 118E, by claiming payment for the provision of certain injections to Patient No._which were not medically necessary.
Each of nineteen additional indictments against Goodman charges that:
on divers dates from on or about August fourteenth in the year of our Lord one thousand nine hundred and ninety-two, through on or about May twelfth in the year of our Lord one thousand nine hundred and ninety-five at Quincy in said County of Norfolk actuated by a continuing criminal intent, being a person who had furnished services for which payment may be made under c. 118E of the General Laws of Massachusetts, did knowingly and wilfully make or cause to be made a false statement or representation of a material fact in one or more applications for payment for services under the said c. 118E, by claiming payment for the provision of certain radiologic examinations of Patient No._ which were not medically necessary.
The indictments against defendant Orthopedic Surgery of the South Shore, Inc. (South Shore) are substantially the same.
Following the defendants’ motion for a bill of particulars, the Commonwealth submitted detailed infor *319 mation with respect to each indictment, including the name of the patient, the patient’s Medicaid recipient number, the date each treatment was provided, the type of treatment (either injection or radiologic examination) and corresponding treatment code,[2] the amount billed for the treatment, the amount paid by Medicaid, and a unique transaction control number.
Thereafter, the Commonwealth amended its bill of particulars to state:
Each such course of procedures constitutes a separate pattern of conduct which, when analyzed from beginning to end as specified in each indictment, demonstrates that the Defendant Goodman must have known that the procedures for which he submitted or caused to be submitted claims to the Medicaid program were medically unnecessary, or that he acted in reckless disregard as to whether such procedures were medically necessary. Each indictment covers all of the procedures administered to a particular recipient. Any one of those procedures, viewed in isolation from the pattern of conduct demonstrated by each of the nineteen patients whose treatment is the subject of these indictments, may not, standing alone, demonstrate the corrupt motive and intent of the Defendant Goodman. Performance of any single minor procedure, even without adequate supporting documentation, justification or interpretation, may be the result of negligence, ignorance or mistake. When such procedures are repeated dozens of times over many months, however, the pattern of conduct is revealed as deliberate, or at best, reckless. When this conduct results invariably in the submission of claims for payment from the Medicaid program, the only conclusion which fairly explains the pattern of treatment is conscious, fraudulent intent.
I. LACK OF PROBABLE CAUSE
The defendants first move to dismiss the indictments on the ground that they are supported by insufficient evidence. As a general rule, an indictment valid on its face should not be dismissed absent a showing that the defendant’s ability to obtain a fair trial is prejudiced. Commonwealth v. Pellegrini, 414 Mass. 402, 405-06 (1993). Thus, in most cases, the court should not inquire into the adequacy or competency of the evidence upon which an indictment is based. Commonwealth v. Robinson, 373 Mass. 591, 592 (1977); Commonwealth v. Salman, 387 Mass. 160, 166 (1982). However, the court will examine the evidence heard by the Grand Jury where there is a claim that an indictment was unsupported by any evidence of criminal activity by the defendant. Commonwealth v. McCarthy, 385 Mass. 160, 161 (1982).
In order for indictments to fulfill their traditional function as an effective protection against unfounded criminal prosecutions, they must be supported by at least enough evidence to establish both the identity of the accused and probable cause to arrest him. Id. at 163; Commonwealth v. Angiulo, 415 Mass. 502, 510 (1993). The standard for a valid indictment is whether the grand jury heard reasonably trustworthy information sufficient to warrant a prudent man in believing that the defendant had committed or was committing the offense charged. Commonwealth v. McCarthy, supra at 163; Commonwealth v. O’Dell, 392 Mass. 445, 450-52 (1984).
The crime for which defendants are indicted, the submission of false claims to the Medicaid program, is set forth in General Laws Chapter 118E, section 40, which provides in relevant part:
Any person who furnishes items or services for which payment may be made under this chapter, who: (1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under this chapter . . . shall be punished . . . G.L.c. 118, §40 (1993).
Goodman and South Shore contend that the Grand Jury heard no evidence that any of the 1,882 applications for payment described in the indictments contained “a false statement or representation of a material fact” as required by the statute.
The Grand Jury heard evidence that under the Medical Assistance Program:
(A) A provider may furnish or prescribe medical services to a recipient . . . only when, and to the extent, medically necessary. A service is “medically necessary” if:
(1) It is reasonably calculated to prevent, diagnose, prevent the worsening of, alleviate, correct, or cure conditions in the recipient that endanger life, cause suffering or pain, cause physical deformity or malfunction, threaten to cause or to aggravate a handicap, or result in illness or infirmity; and
(2) there is no comparable medical service available or site of service available or suitable for the recipient requesting the service that is more conservative or less costly. Medical services shall be of a quality that meets professionally recognized standards of health care, and shall be substantiated by records including evidence of such medical necessity and quality. 130 Code Mass. Regs. §450.204.
In addition, the Grand Jury had before them Goodman’s provider application which included a signed agreement “to comply with all state and federal statutes, rules, and regulations applicable to the Provider’s participation in the Medical Assistance Program.’’[3] Thus, the Grand Jury could infer that Goodman knew that under the Medicaid regulations, he was entitled to be reimbursed only for medically necessary services and that he therefore intended to represent, in submitting each claim for payment, that the particular service which he provided the recipient, and for which he sought reimbursement under the *320 Medicaid program, was medically necessary as defined in 130 Code Mass. Regs. §450.204.
Finally, the Grand Jury heard evidence that Goodman’s course of treatment of each of the nineteen patients with repeated trigger point injections and x-rays did not meet professionally recognized standards of health care and was not medically necessary, and that Goodman had sufficient training and experience to know that such was the case. Thus, the Grand Jury heard reasonably trustworthy information sufficient to warrant a prudent man in believing that with respect to the treatment of each patient at issue, in applying for payment under Medicaid, Goodman knowingly and willfully made a false representation that the services for which he sought payment were medically necessary. Accordingly, this Court concludes that the Grand Jury had probable cause to charge Goodman and South Shore with the violations of the Medicaid False Claims Act, G.L.c. 118, §40, charged in the present indictments.
II. DUPLICITY
Goodman and South Shore further contend that the indictments against them must be dismissed as duplicitous. Duplicity is the charging of two or more distinct and separate offenses in a single count of an indictment. Commonwealth v. Fuller, 163 Mass. 499, 499-500 (1895); Commonwealth v. Barbosa, 421 Mass. 547, 553 n. 10 (1995); United States v. Canas, 595 F.2d 73, 78 (1st Cir. 1978). The Commonwealth is generally free to bring indictments in as many counts as it feels appropriate in the circumstances. This discretion is limited only when the form of the indictment infringes the substantial rights of the defendant. Commonwealth v. Gurney, 13 Mass.App.Ct. 391, 399 n.9 (1982).[4]
The charging of several distinct offenses in a single count:
is unacceptable because it prevents the juiy from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both. Duplicity can result in prejudice to the defendant in the shaping of evidentiary rulings, in producing a conviction on less than a unanimous verdict as to each separate offense, in determining the sentence and in limiting review on appeal.
W. LaFave, Criminal Procedure §19.3(c) (2d ed. 1996). Thus, the doctrine of duplicity protects a defendant’s right to notice of the charges against him, to a unanimous verdict and to freedom from double jeopardy. United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980); United States v. Marshall, 75 F.3d 1097, 1111 (7th Cir. 1996); United States v. Trammell, 133 F.3d 1343, 1354 (10th Cir. 1998).
Nonetheless, the joinder of two separate criminal acts in one count of an indictment is not duplicitous where the count alleges a single continuing offense occurring at several times and places over a period of time. Commonwealth v. Fuller, supra at 500; Commonwealth v. Barbosa, supra at 551. Certain crimes, by statutory definition, may relate to periods of time. Commonwealth v. England, 350 Mass. 83, 86 (1966). See e.g., Commonwealth v. Robinson, 126 Mass. 259, 260-61 (1879) (keeping a tenement for the illegal sale of liquor); Commonwealth v. Peretz, 212 Mass. 253, 254 (1912) (deriving support from the earnings of a prostitute); Commonwealth v. Runge, 231 Mass. 598, 600 (1919) (illegally holding oneself out as a practitioner of medicine).
In addition, with respect to crimes involving larceny, where it appears that successive takings are actuated by a single, continuing criminal impulse or intent or are pursuant to the execution of a general larcenous scheme, the prosecutor may, but need not, charge them as a single crime regardless of the extent of time which may have elapsed between each taking. Commonwealth v. Murray, 401 Mass. 771, 772 (1988). See, e.g., Commonwealth v. Stastun, 349 Mass. 38, 44 (1965) (successive solicitations for a bribe under G.L.c. 268, §8); Commonwealth v. England, supra at 86-87 (successive thefts of money under the general larceny statute, G.L.c. 266, §30); Commonwealth v. Murray, supra at 774 (successive false entries on corporate books under G.L.c. 266, §67). If a statute reveals an intent to make several acts only one single continuous offense, the commonwealth cannot charge the defendant with multiple offenses. Commonwealth v. Donovan, 395 Mass. 20, 28 (1985). It does not follow, however, that where a statutory offense could consist of either a single act or a series of continuous acts, the prosecutor must charge the defendant with multiple offenses for multiple acts. Commonwealth v. Stastun, supra at 45; Commonwealth v. Murray, supra at 773. Rather, where separate acts meet the test for a continuing offense, the Commonwealth has the option of charging said acts either as one crime or as numerous separate crimes. Commonwealth v. Murray, supra at 774.
General Laws Chapter 118E, section 40, provides in relevant part:
Any person who furnishes items or services for which payment may be made under this chapter, who: (1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under this chapter . . . shall be punished . . . G.L.c. 118, §40 (1993).
Clearly, under the language of this statute, each false claim for Medicaid payment constitutes a separate crime. Nonetheless, the Commonwealth argues that Goodman and South Shore’s conduct in submitting 1,882 applications for payment, using the Medicaid billing cards of 19 different patients, constituted 38 *321 continuing offenses of larceny by false claims from the Medicaid program.
Each of the 19 indictments concerning trigger point injections alleges that between 1992 and 1995, with respect to the particular Medicaid patient identified, Goodman undertook a course of medically unnecessary injections in order to receive repeated payment from the Medicaid program under that patient’s Medicaid card.[5] Further, the grand jury heard evidence from numerous patients that Goodman utilized a standard procedure with respect to the injections: scheduling the patient for injections approximately three times a month, injecting the patient quickly with no or only a cursory medical examination first in a visit lasting only two or three minutes, and continuing weekly injections despite the patients’ reports of no beneficial improvement. Thus, although each count charges multiple false claims with respect to a particular patient, such successive claim can be properly characterized as part of a general larcenous scheme to collect payment from the state, under a particular Medicaid recipient card, for a medically unnecessary course of treatment.
The same analysis applies to the 19 indictments concerning x-rays, each of which alleges that between 1992 and 1995, with respect to the particular Medicaid patient identified, Goodman performed a course of medically unnecessary x-rays in order to receive repeated payment from the Medicaid program under that patient’s Medicaid card. Compare Commonwealth v. England, supra at 84 n. 1 (concluding that an indictment charging that a defendant “at divers times between July 1, 1959 and June 30, 1962, pursuant to a single scheme, did steal money of the value of more than one hundred dollars of the property of the Commonwealth of Massachusetts, by means of false time sheets” properly set forth a continuing offense of larceny); Commonwealth v. Murray, supra at 772-73 (suggesting that where a defendant forged 180 checks and made 128 false entries in employer’s books to steal from his employer over the course of five years, this could be charged as a continuing offense of larceny under G.L.c. 266, §30 and a continuing offense of false entry under G.L.c. 266, §67, although it could also be charged as 308 separate crimes).
Compare United States v. Hammen, 977 F.2d 379, 382-83 (7th Cir. 1992) (concluding that although each execution of a scheme to defraud a financial institution under 18 U.S.C. §1344 could constitute a separate offense, an indictment properly joined multiple transactions in a single count where it was carefully crafted to allege only one execution of a continuing scheme); United States v. Gordon, 990 F.Supp. 171, 178 (E.D.N.Y. 1998) (concluding that an indictment properly joined numerous acts of money laundering in a single count where all acts were part of continuous scheme to use corporate funds to purchase, furnish, and maintain a condominium for the defendant’s benefit, thus concealing the defendant’s control over the funds from the IRS); United States v. Steurer, 942 F.Supp. 1183, 1186-87 (N.D. Ill. 1996) (concluding that an indictment properly charged four separate false statements to financial institution in a single count under 18 U.S.C. §1014 where although each false statement could constitute a separate offense, all four were part of a continuing course of conduct relating to a single loan).
It should be noted that although the Commonwealth could have charged Goodman with 1,882 separate crimes under G.L.c. 118, §40, “(b]y grouping several offenses in each count, this indictment serves not to expand defendant’s exposure, but to limit it.” United States v. Gordon, supra at 171. See also United States v. Steurer, supra at 1187. Thus, this Court concludes that the indictments in the present case are not duplicitous because each count alleges a continuing offense of Medicaid fraud.
Nonetheless, this Court feels compelled to examine whether, despite properly alleging continuing offenses, the indictments at issue offend the constitutional protections underlying the doctrine of duplicity. In the present case, although each count encompasses more than one submission of a false claim to Medicaid, the indictments provide Goodman and South Shore with sufficient notice of the charges against them. Each count involves only a single patient and a single procedure, either injections or x-rays; further, the bill of particulars contains the date of each treatment for which payment was sought and the unique transaction control number for the procedure. Goodman cannot complain that he lacks notice of the charges against him or the factual predicate underlying government’s theory of the case. See United States v. Gordon, supra at 178. See Dolan v. Commonwealth, 304 Mass. 325, 340 (1939) (stating that where the defendant “was fully advised of the nature and grounds of the offence charged, an objection to the complaint for duplicity was merely formal and not substantial”). Compare Commonwealth v. Fuller, 163 Mass. 499, 500 (1895) (quashing an indictment charging the defendant in one count with numerous acts of adultery with the same person on different dates as duplicitous where the defense was impaired because “the defendant when putting in his testimony could not know upon which occasion the Commonwealth would rely” for a conviction).
Further, this Court concludes that with respect to the defendants’ right to a unanimous verdict, appropriate jury instructions can cure any problem which may be created by the multiple transactions alleged in each count. The requirement of a unanimous jury ensures that the government has proven the defendant’s guilt beyond a reasonable doubt with respect to the crime charged. Commonwealth v. Conefrey, 420 Mass. 508, 512 n.7 (1995). A specific unanimity instruction is necessary in cases with *322 indictments alleging continuing offenses to ensure that a conviction results only from twelve jurors agreeing that the defendant committed one particular act contained in the indictment. Commonwealth v. Barbosa, supra at 552-53. The Commonwealth’s theory of the present case is essentially that the large number and frequency of injections given to each particular patient creates the inference that at some point, the course of injection therapy was medically unnecessary, such that one or more of the claims for injections submitted to Medicaid was fraudulent.[6] An instruction that on each count, the jury must unanimously find that at least one injection or x-ray on a particular date was medically unnecessary will protect Goodman and South Shore’s right to a unanimous verdict. See United States v. Blandford, 33 F.3d 685, 699 (6th Cir.), cert. den., 115 S.Ct. 1821 (1994) (concluding that duplicity of single count alleging four acts of extortion was cured by jury instruction requiring jury to unanimously agree on one particular payment alleged in count). See also United States v. Trammell, supra at 1354 (stating that duplicitous indictment can be cured by requiring jury unanimity on one particular act charged in count); United States v. Gordon, supra at 179 (same); United States v. Steurer, supra at 1187 (same). Compare United States v. Waldman, 579 F.2d 649, 654 (1st Cir. 1979) (concluding that a single count alleging a securities fraud scheme was not duplicitous where jury was instructed that the multiple acts in count were not separate crimes but were elements of the scheme charged).
Finally, with respect to the protection against double jeopardy, the bill of particulars lists the dates of each injection and x-ray for which Goodman and South Shore allegedly submitted a false Medicaid claim. Thus, following a verdict in this case, neither defendant can again be tried or punished for a false claim arising out of any of the specified medical procedures presented to the jury in this case. See United States v. Murray, supra at 898; United States v. Gordon, supra at 178. Hence, the indictments in this case do not offend the constitutional protections implicated by the doctrine of duplicity and need not be dismissed on that ground.
III. RIGHT TO PROSECUTION BY INDICTMENT
Goodman and South Shore further seek to dismiss the indictments on the ground that because they fail to specify which false representations the Grand Jury concluded violated G.L.c. 118E, §40, they violate the defendants’ right to grand jury indictment. Article 12 of the Massachusetts Declaration of Rights requires that no one may be convicted of a crime punishable by a term in the State prison without first being indicted for that crime by a grand jury. Commonwealth v. Dean, 109 Mass. 349, 352 (1872); Commonwealth v. Barbosa, 421 Mass. 547, 549 (1995). “[T]his rule is not to be defeated by allowing the defendant to be convicted upon evidence of another offense of the same kind [as the one charged] but not identical to it.” Commonwealth v. Dean, supra at 352. To allow a defendant:
to be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him ... is to deprive him of a basic protection which the guaranty of the intervention of the grand jury was designed to secure. Russell v. United States, 369 U.S. 749, 770 (1962).
Thus, for example, where a grand jury heard evidence that the defendant had participated in two separate drug transactions on the same date, the defendant was charged with one count of distribution of cocaine in an indictment referring to the date of the transaction but not to the time of the sale or the identity of the buyer, and the prosecutor presented evidence of both transactions at trial, the defendant’s conviction had to be vacated because of the very real possibility that he had been “held to answer” for a crime for which he was not indicted, in violation of Article 12. Commonwealth v. Barbosa, supra at 552-53. In such a case, a specific unanimity instruction would be inadequate to cure the constitutional defect because the trial jury nonetheless might have reached unanimity only on a transaction for which the grand jury never agreed to indict. Id. at 552. Compare United States v. Fitapelli, 786 F.2d 1461, 1463 (11th Cir. 1986) (concluding that where an indictment under the Sherman Act alleged an effect theory of jurisdiction and the prosecutor at trial argued a flow theory, the defendant’s conviction must be set aside because the jury convicted on a basis not charged by grand jury).
In the present case, Goodman emphasizes that although the Grand Jury heard evidence that at some point during the course of each patient’s treatment, the injections and x-rays became medically unnecessary, the Grand Jury failed to specify in returning the indictments which application for payment contained a false statement, i.e., which particular injection or x-ray for each patient was medically unnecessary. Indeed, prior to the voting, one Grand Juror asked the Assistant Attorney General presenting the case, “When we are voting, do we have to vote on every single one each time, or can we group them?” The AAG responded, “I will leave to the sound judgment and discretion of this body on how they wish to proceed to conduct the voting, there’s no requirement.”
Thus, Goodman argues, the Grand Jury may have unanimously agreed that the fifth injection given to Patient 1 was medically unnecessary and accordingly, indicted him for the entire series of false Medicaid claims based on injections given to Patient 1. At trial, however, the jury might unanimously agree that the seventh injection given to Patient 1 was medically unnecessary and thus, convict Goodman for the entire series of false Medicaid claims based on injections given to Patient 1. Under such circumstances, Goodman argues, he would be held to answer by the trial *323 jury for a crime which the Grand Jury never unanimously agreed to charge.
This argument disregards the fact that with respect to each type of treatment provided to a particular Medicaid recipient, the Commonwealth has charged a single violation of G.L.c. 118, §40 actuated by a continuing criminal intent and effected by making one or more false claims. The Grand Jury found probable cause to believe that between certain dates, Goodman conducted a general larcenous scheme to collect payment from the state under a particular recipient’s Medicaid card number, for a medically unnecessary course of treatment of injections (or x-rays). As long as the trial jury unanimously agrees on one specific misrepresentation of medical necessity for that recipient, it will have held Goodman to answer for the same crime charged by the Grand Jury.
The circumstances of this case do not present the danger that the defendant may be convicted on the basis of events different than those presented to the Grand Jury, because the specific transactions and dates thereof considered by the Grand Jury appear in the bill of particulars. Moreover, given the framing of the indictment as a continuing offense, regardless of which particular injection or x-ray the jury unanimously finds to be medically unnecessary, Goodman will be convicted of the crime with which the Grand Jury intended to charge him; a single violation of G.L.c. 118, §40, effected by making one or more false claims under a particular recipient’s Medicaid card number, for a medically unnecessary course of treatment given to that recipient. This is not a case where the indictment charges a single crime committed on a particular date but the underlying facts reveal that the accused engaged in two or more separate acts on that date, any of which could constitute the crime charged. Compare Commonwealth v. Powers, supra at 352 (concluding that assault conviction violated the defendant’s right to a grand jury indictment where the grand jury charged the defendant with rape, the commonwealth proceeded with only so much of the rape indictment as constituted an assault, and the evidence showed that the defendant committed multiple assaults on the victim over the course of two or three hours, only one of which occurred during the rape); Commonwealth v. Barbosa, supra at 550-51 (concluding that cocaine distribution conviction violated the defendant’s right to a grand jury indictment where the grand jury heard evidence that the defendant committed two separate drug sales on the same day, the indictment charged an unspecified single violation of G.L.c. 94C, §32A, and the trial jury heard evidence of both drug transactions). Thus, this Court concludes that neither Goodman nor South Shore will be deprived of the Article 12 right to be tried only upon a charge found by the grand jury.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motion to dismiss the indictment be DENIED.

With respect to the radiological examinations, the code indicates whether the spine (cervical), spine (thoracic) or shoulder was x-rayed.

Pursuant to 130 Code Mass. Regs. §450.223(C)(1), ‘The following provisions shall be a part of every provider agreement whether or not they are included verbatim or specifically incorporated by reference... The contractor (provider) agrees to comply with all laws, rules, and regulations governing the Medical Assistance Program (see M.G.L.c. 118 §18).”

Pursuant to Mass.R.Crim.P. 9(a)(2), if two or more related offenses are of the same or similar character, they may be charged in the same indictment with each offense stated in a separate count. Although one commentator has suggested that this rule requires each offense to be stated in a separate count, see Smith, Criminal Practice and Procedure §1039, M.P.S. vol. 30 at 589 (1983), this Court does not read the rule as prohibiting the joinder of offenses in a single count where the case law would so permit.

The indictments against South Shore are substantially similar.

The same theory exists with respect to the x-ray therapy.