UNITED STATES of America,
Plaintiff–Appellee,

v.

Bernard Anthony DURMAN, David Buff-
ington, Cathy A. Moline, Charles Brad-
ford Moline, Ramon F. Castellanos, and
Juan A. Castellanos, Defendants–Appel-
lants.

Nos. 92–2535, 92–2708, 92–3437, 92–
3442, 92–3846 and 92–3847.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1994.

Decided July 13, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 22, 1994.

Order Denying Rehearing and Suggestion
for Rehearing En Banc Sept. 8, 1994.

Barry R. Elden, Asst. U.S. Atty., Joshua Vincent (argued), Crim. Receiving, Appellate Div., Joseph D. Heyd, Office of the U.S. Atty., Chicago, IL, for U.S.

Robert E. Canfield (argued), Rockford, IL, for Bernard A. Durman.

Daniel J. Cain, David A. Caulk (argued), Sreenan & Cain, Rockford, IL, for David Buffington.

Joseph F. Marconi, Rockford, IL, for Cathy A. Moline.

David R. Castegnaro, Rockford, IL, for Charles B. Moline.

Steven J. Plotkin, Chicago, IL, for Ramon Castellanos.

Donita Farr, New York City, for Juan Castellanos.

Before EASTERBROOK and RIPPLE, Circuit Judges, and DILLIN, District Judge.[*]

DILLIN, District Judge.

Appellants are six of twenty-seven defendants named in a thirty-count indictment. Count 1 charged all defendants with participating in a conspiracy to acquire, transport, store, possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2 (The "Mauerman conspiracy.") The additional counts charged various of the defendants with individual acts arising out of the conspiracy. Twenty-one of the defendants entered pleas of guilty. Appellant Bernard Anthony Durman ("Durman") entered a conditional plea of guilty to Count 1 subject to his right to appeal the Court's denial of his motion to suppress. Appellant David Buffington ("Buffington") likewise entered a plea of guilty to Count 1, as well as to Count 30. He and Durman both allege errors in sentencing.

Appellants Cathy A. Moline and Charles Bradford Moline ("the Molines") were convicted of Count 1 on trial by jury, and appellants Ramon F. Castellanos ("Ramon") and Juan A. Castellanos ("Juan") were likewise convicted of Count 1 in a separate jury trial. Each of said appellants alleges various trial and pretrial errors, and Ramon and Juan also allege sentencing errors.

I. *Appeal of Durham*

A. *Motion to Suppress*

Beginning in October, 1989, Durman participated in the storage, repackaging, and distribution functions of the Mauerman organization. He received numerous kilograms of cocaine, stored them at his home in Rockford, and later "cut" or diluted the cocaine and repackaged it in ounce quantities for street sale. Altogether he handled approximately 25 kilograms of cocaine, and was paid about $15,000 in cash. Following his arrest, he signed a confession and consented to a search of his home, during which cocaine was recovered.

However, following his indictment, Durman filed a motion to suppress the statements he made at the time of his arrest, claiming that he requested an attorney yet his interrogation continued, and that he was subjected to coercive interrogation techniques. A hearing was held at which Durman testified, as did two F.B.I. agents and a Rockford police officer. The law enforcement officers contradicted Durman's charges. Judge Stanley J. Roszkowski, the judge originally assigned to this case, held that the evidence established that Durman waived his rights and made his statement without any "undue duress or strain," and that the statements of the officers were credible. On appeal, Durman invites this Court to reverse the district court's assessment of the evidence.

■ This Court recently has commented that when reviewing the denial of a suppression motion, we will disturb a district court's factual findings only if the appellant establishes clear error. *United States v. Montgomery,* 14 F.3d 1189 (7th Cir.1994). Where the district court's decision rests upon an assessment of conflicting witness testimony, this Court "must defer to the credibility assessments of the district judge who viewed the witnesses and heard the testimony." *Id.* at 1194. *See, also, United States v. Rodgers,* 755 F.2d 533 (7th Cir.), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985). That is the case here, and we find no error in the court's ruling.

[*] Hon S. Hugh Dillin, of the Southern District of Indiana, sitting by designation.

## B. *Alleged Errors in Sentencing*

Durman raises three challenges to his sentence, none of which have merit.

 First, the appellant moved to "compel the government" to request a downward departure from the applicable statutory minimum sentence under 18 U.S.C. § 3553(e) and § 5K1.1 of the United States Sentencing Guidelines ("the Guidelines"). Durman claimed he deserved such a motion because of "promises" by government agents and because he believed he did cooperate and provide substantial assistance to the government. Section 3553(e) vests the government with the sole discretion to make a motion for downward departure, and without a government motion the court cannot depart below a statutory minimum sentence. *United States v. Egan,* 966 F.2d 328, 331–32 (7th Cir.1992); *United States v. Spears,* 965 F.2d 262, 280–81 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992). Further, Durman did not allege or offer evidence to prove that the government harbored an unconstitutional motive in choosing not to make a departure motion. *See Egan,* 966 F.2d at 331–32 (under *Wade v. United States,* — U.S. —, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), defendant must make a "substantial threshold showing" of unconstitutional government motive). In light of these facts, the denial of Durman's request was proper.

 Second, Durman objected to the presentence report's conclusion that he did not merit a 2–level "minor role" reduction under Guideline § 3B1.2(b). Determining whether a defendant merits a reduction under § 3B1.2 relies heavily on the facts; thus, this Court affirms the district court's decision on that issue absent clear error. *United States v. DePriest,* 6 F.3d 1201, 1214 (7th Cir.1993); *United States v. Pitz,* 2 F.2d 723, 732 (7th Cir.1993). After taking evidence and argument concerning Durman's role, the district court concluded that Durman was not a "minor participant" in the charged conspiracy. He had the responsibility to store, cut, and repackage 25 kilograms of cocaine, up to 25% of that sold by the conspirators. Rather than showing he was "substantially less culpable" than the other participants, the evidence established that Durman was a trusted and loyal member of the conspiracy. Thus, the court properly denied the reduction. *Cf. Pitz,* 2 F.3d at 733.

 Third, prior to sentencing Durman moved the court to invoke 28 U.S.C. § 2901 *et seq.,* which affords district courts the "sole discretion" to hold criminal charges in abeyance for certain "eligible individuals" who are addicted to narcotic drugs and are likely to be rehabilitated through treatment. This statute provides that the court can commit civilly such individuals to the Surgeon General for treatment. 28 U.S.C. § 2902. The district court denied the defendant's request, finding that he was not an "eligible individual" because he had been charged with conspiring to possess with intent to distribute and to distribute cocaine. *See* 28 U.S.C. § 2901(g)(2): "eligible individual" does not include anyone "charged with unlawfully importing, selling, or conspiring to import or sell, a narcotic drug." The court determined that "distribute" and "sell" are functional equivalents for these purposes. We agree.

Further, the statute itself provides that a district court's civil commitment determination is not reviewable on appeal. 28 U.S.C. § 2906. Durman's challenge must be denied on that basis in any event.

## II. *Appeal of Buffington*

According to his plea agreement, Buffington began storing and distributing cocaine for the Mauerman narcotics organization in the summer of 1990. From then until his arrest on December 13, 1990, he received and stored multiple kilograms of cocaine both at his home and auto repair shop. He also cut and repackaged the substance and sold it to his customers, including the Molines. After his arrest he agreed to cooperate with the government, but welshed on his agreement.

Like Durman, Buffington filed a motion to suppress evidence as to the circumstances surrounding his arrest, consent to search, etc., all of which was contradicted by the arresting officers. Judge Roszkowski denied the motion, specifically finding that Buffington's testimony was not credible.

■ At sentencing, Judge Reinhard reviewed the transcripts from the suppression hearing with Buffington's agreement. He also, in effect, held a second hearing in that Buffington and the officers all testified as to the questioned events. Once again the court held Buffington's testimony to be incredible, and increased Buffington's offense level by two levels for willfully obstructing justice by lying under oath at the suppression hearing, pursuant to Guideline § 3C1.1. The district court's finding that Buffington committed perjury, and therefore merited the increase, will not be reversed absent clear error. *United States v. Hamm*, 13 F.3d 1126 (7th Cir.1994). The court satisfied the requirements of *United States v. Dunnigan*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), finding that appellant gave false testimony with the willful intent to do so, and there was no clear error in these findings given the overwhelming weight of the testimony.

### III. *Appeal of the Molines*

The Molines joined the conspiracy in the summer of 1989 and continued as members until their arrest in March 1991, following the return of the indictment. They made a great many purchases of Mauerman cocaine during this period of time through various intermediaries and then resold it. Eventually, they dealt directly with Edward Mauerman. In addition to receiving cocaine from him, acquired by Mauerman from the Castellanos brothers in Florida, the Molines furnished cocaine to Mauerman from a California source of their own. They were convicted of Count 1 by a jury. Both chose not to testify, nor to present any evidence.

#### A. *Motion to Strike Entire Venire Panel*

■ After reading the indictment and introducing the parties at the beginning of jury selection, the court asked the venire panel if any of them knew about the case. One juror stood up and said that he "was on a case that they had tried before the two defendants," but did not serve. At side-bar the juror explained that he had been in the jury pool several months earlier when the Molines came to trial on a different indict-

ment, but was not picked to serve on that jury. The court immediately excused the juror for cause and instructed him to say nothing to the other jurors.

The Court denied defense counsel's request that the entire panel be dismissed, noting that the remaining jurors had heard nothing about the prior proceedings. The court advised the remaining jurors:

> I want to indicate to you that a juror did respond that he had been in the courtroom on a previous occasion when the defendants were here. I have excused that juror, and I want to make it clear to the jurors that the fact that the defendants may have been in this courtroom at a previous time is not any indication of what occurred on that occasion.

When no other jurors indicated that they had seen the defendants before, the court repeated, "I want to admonish all of you to completely disregard what [the] one juror has indicated. It has no relevance to this case." Defense counsel did not submit a further question to be asked of specific jurors. The court nonetheless inquired of many of the jurors whether the excused juror's comment would have any adverse effect on their ability to be impartial and give the defendants a fair trial. They responded in the negative.

At the outset we note that great deference is accorded to the trial judge regarding his refusal to remove jurors for alleged bias. *United States v. Barnes*, 909 F.2d 1059 (7th Cir.1990). The court's findings regarding jurors' impartiality and ability to serve may be overturned only for "manifest error." *Mu'Min v. Virginia*, 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).

In this case the Molines have established no error; "manifest" or otherwise, in the district court's careful handling of the juror's comment. *Cf. United States v. Carson*, 9 F.3d 576 (7th Cir.1993) (denial of mistrial held proper when an arguably more egregious statement by a juror during voir dire was cured by procedures virtually identical to those in question).

## B. Refusal to Give Tendered "Multiple Conspiracy" Instruction

As stated above, for a brief time the Molines departed from their role of purchasers of Florida cocaine from Mauerman and became suppliers of California cocaine *to* Mauerman. This caused the Molines to tender an instruction telling the jury it "must acquit" if the defendants were members of "some conspiracy" other than the single conspiracy charged in the indictment. The court chose not to give this instruction, but allowed the defendants to argue that the government could not prove the charged conspiracy with evidence that the defendants were members of some second conspiracy.

We look to see if the instructions given treated the conspiracy issue fairly and adequately. If they did, we will not disturb them. *United States v. Severson*, 3 F.3d 1005, 1011 (7th Cir.1993). The court gave the pattern instructions on the elements of conspiracy, which included repeated references to the government's burden to prove that each defendant willfully joined the charged conspiracy, i.e., the "Florida" conspiracy. This was sufficient.

The Molines' "multiple conspiracy" argument amounts to nothing more than a claim that the government failed to establish their membership in the charged conspiracy. *See United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir.1991). Contrary to the Molines' tendered instruction, even if the evidence proved another, "varying" conspiracy, that variance would not be fatal so long as a reasonable trier of fact could *also* have found the defendants participated in the single, charged conspiracy. *Id. See also, Severson*, 3 F.3d at 1009.

Viewing the evidence in the light most favorable to the government, *see United States v. Marshall*, 985 F.2d 901, 907 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993), the government conclusively established the Molines' membership in the single conspiracy charged. Donnie Davis and Edward Mauerman testified to months of drug deliveries and "fronts" made to the Molines from 1989 through 1990. The Molines personally met with Edward Mauerman to discuss their running drug debts, and Davis continued to distribute Mauerman's cocaine to the Molines after he became a courier. When Mauerman lost his Florida couriers, the Molines offered to supply him "better" kilograms, thus shifting their role in—but by no means resigning from—the charged conspiracy to possess and distribute cocaine. What's more, the jury heard the Molines' recorded statements recounting their history of involvement with the Mauerman organization.

Because of the paucity of evidentiary support for their multiple conspiracy claim, the Molines were not prejudiced by the court's denial of their tendered instruction, *see Severson*, 3 F.3d at 1010, nor were they entitled to such an instruction as their "theory of defense." *Id.* at 1011. Moreover, the instructions as a whole fairly and accurately informed the jury of the government's burden to establish the Molines' membership in the single charged conspiracy; for that reason as well, the court acted well within its discretion in refusing the tendered multiple conspiracy instruction. *Id. See also, United States v. Soto-Rodriguez*, 7 F.3d 96, 100–01 (7th Cir.1993); *Marshall*, 985 F.2d at 907.

## IV. The Castellanos Brothers

Virtually all of the cocaine distributed by the Mauerman conspiracy was purchased from Ramon Castellanos, aided and abetted by his brother Juan. During 1987 and the greater part of 1988 Ramon lived in Belvidere, Illinois and transacted his business there. He then moved to Florida, where the brothers resided at Delray Beach, and later at other places in south Florida. From there, various couriers or "mules" transported multi kilograms of cocaine to Rockford. The record reflects dozens of such trips. At sentencing, Judge Reinhard found that the total amount of cocaine was in the area of 100 kilograms.

## A. The Court's "Object" Instruction

Count 1 charged the Castellanos brothers with conspiring "knowingly and intentionally to possess with intent to distribute and to distribute" cocaine in violation of 21 U.S.C. §§ 841(a) and 846. At trial, the government tendered a standard conspiracy instruction. In listing the elements, the instruction stated that the government must prove that the

object of the conspiracy "was either to distribute cocaine, or to possess with intent to distribute cocaine, or both to distribute cocaine and to possess with the intent to distribute cocaine." The Castellanos brothers tendered a slightly different elements instruction. As to the "object" element, however, the defendants' tendered instruction was identical.

■ At the instruction conference, the defendants objected to some language in the government's conspiracy instruction—but, notably, *not* the "object" element. The instruction ultimately given (without objection) by the district court included the "object" language contained in both the government's and defendants' tendered instructions.

Now, on appeal, the Castellanos brothers claim that the object language violated the grand jury clause of the Fifth Amendment by impermissibly broadening the indictment. Because they not only failed to object to that language but tendered it themselves, they have waived this argument. *United States v. Sherwood,* 770 F.2d 650, 652–53 (7th Cir. 1985). In light of the defendants' waiver, this Court will affirm absent "plain error," meaning the challenged language must have resulted in "an actual miscarriage of justice, which implies the conviction of one who but for the error probably would have been acquitted." *Id. See, also, United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993).

■ The problem for Juan and Ramon is that § 841(a)(1) provides for alternate theories of liability. Section 841(a)(1) states: "it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Where the relevant statute lists alternative means of violation, the "general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any of the acts charged." *United States v. Cusumano,* 943 F.2d 305, 311 (3rd Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992) (citing *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970)). This

rule extends to a trial court's jury instructions in the disjunctive in the context of a conjunctively worded indictment. *Id.*

■ Even though the indictment was framed in the conjunctive, there was no miscarriage of justice in the instant case, because a jury could have found that Ramon and Juan violated § 841(a)(1), either by distributing a controlled substance, or by possessing with the intent to distribute. This is exactly what the jury instruction explained. *See Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

■ This same rationale applies to the Castellanos' related argument that the instruction allowed the defendants to be convicted based on a nonunanimous jury verdict. Because the instruction allowed the jury to convict if it found Juan and Ramon distributed cocaine or possessed with the intent to distribute, defendants assert that some of the jurors could have voted to convict for distributing cocaine, and some could have voted to convict for possessing with intent to distribute cocaine.

This argument fails. Juan cites this Court to *United States v. Gordon,* 844 F.2d 1397, 1400 (9th Cir.1988). In *Gordon,* however, Count 1 of the indictment contained two separate offenses, one for conspiracy to defraud the United States, and one for conspiracy to cover up the fraud. The Court found that Count 1 alleged two separate conspiracies, and thus there was a distinct possibility of a nonunanimous jury verdict. *Id.* In the instant case, however, Count 1 charges one conspiracy, and a violation of essentially one statute, 21 U.S.C. § 841(a)(1). The instruction was correct.

### B. *Cross–Examination*

■ The Castellanos brothers assert that the district court erred by improperly terminating their attorneys' respective cross-examinations of Edward Mauerman. During trial, each attorney began to inquire about Edward Mauerman's meetings with the Castellanos' former attorney, Mr. Mottweiler. The district judge did not allow this line of inquiry to continue, concluding that the questions were not relevant to Ramon or Juan's guilt or innocence. The Castellanos claim

that those rulings constituted an abuse of discretion. However, each attorney, at sidebar, indicated that he or she was finished with the questions and would move on.

Our review of the admissibility of testimony is guided by the well established rule that the trial judge has broad discretion in assessing the relevancy of testimony. *United States v. Carter,* 720 F.2d 941 (7th Cir.1983). Even if the attorneys had not finished with this line of questioning, we find no abuse of discretion on the part of the trial judge. Defendants were allowed to cross-examine Mauerman extensively and had the opportunity to probe credibility and bias. We do not find evidence that the judge's decision to terminate questioning in this area deprived Juan and Ramon of a meaningful opportunity to impeach Mauerman or to present their case.

### C. *Admission of Tape and Transcript*

Ramon and Juan additionally contend that the trial court improperly admitted into evidence a substantially unintelligible tape recording of conversations between Ramon and a government informant. This error was exacerbated, they assert, by the court's allowing a transcript of this recording to be given to the jury.

Ramon asserts that the tape contains eighty-two "unintelligibles" in thirty-five pages of transcript, and because the tape was so garbled, the jury attached disproportionate weight to the transcript. The transcript itself, asserts Ramon, also was prepared improperly. As part of the preparation process, a government agent would write down his interpretation of the tape at any point at which the tape was unintelligible.

█ Whether a recording is untrustworthy is left to the sound discretion of the district court. *United States v. Degaglia,* 913 F.2d 372, 378 (7th Cir.1990), as is the decision to permit the use of written transcripts of tape-recorded conversations. *United States v. Camargo,* 908 F.2d 179, 183 (7th Cir.1990). This Court repeatedly has approved the practice of sending transcripts to the jury. *Id.* (citations omitted).

█ In the instant case, we find no abuse of discretion. Ramon's counsel repeatedly highlighted that the transcript contained numerous "unintelligibles." He cross-examined government witnesses concerning the preparation of the transcripts. The defendant was given the opportunity to, and did, dispute the interpretations of the tape and was given the opportunity to offer his own transcript. Additionally, the informant and the individual who prepared the tape testified, and the judge instructed the jury that only the tape, and not the transcript, was to be considered when weighing the evidence. *Cf. United States v. Martinez,* 951 F.2d 887 (8th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992).

### D. *Allowing Jury to Review the Indictment*

Appellants Castellanos claim that their convictions must be reversed because the court provided the jury with a copy of the indictment, which contained allegations unsupported by the evidence at trial, by which they were prejudiced.

Count 1 of the indictment charged the Castellanos brothers with cocaine conspiracy in violation of 21 U.S.C. § 846. Membership in the charged conspiracy is the only crime or act with which they are charged. Count 1 also contains several paragraphs describing actions that "the defendants" (all twenty-seven of them) took as part of the conspiracy. These paragraphs simply provide some detail regarding the nature and activities of the conspiracy of which Ramon and Juan were members.

█ In proving the existence of the charged conspiracy, the government did in fact offer evidence that members of the conspiracy performed the actions described in virtually all of the passages in Count 1 about which they complain. The court instructed the jury that the indictment was not evidence but was merely the charging instrument. Further, the court granted defense counsel permission to argue that the indictment contained allegations the government had failed to prove. Thus, any error was harmless. *Cf. United States v. England,* 966 F.2d 403, 408 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 668, 121 L.Ed.2d 592 (1992); *United States v. Williams,* 809 F.2d 75, 80–82 (1st

Cir.1986), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987).

### E. *Calculation of Amount of Cocaine Attributable to the Brothers*

 In their separate briefs, the Castellanos each claim that the district court considered too large a quantity of cocaine in determining his offense level. In so claiming, the brothers attack factual findings to which this Court gives "great deference." *United States v. Villarreal*, 977 F.2d 1077, 1080 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993). The court's ultimate determination of the quantity of drugs attributable to each defendant will be affirmed absent clear error. *United States v. Montgomery*, 14 F.3d 1189 (7th Cir.1994).

 In calculating the base offense level under § 2D1.1 and § 1B1.3, the court must determine the "relevant conduct" of the defendant, which is defined as "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would otherwise be accountable ... that were in furtherance of the offense." *United States v. Mojica*, 984 F.2d 1426, 1442 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993). In other words, in computing the base offense level, the district court can hold a drug conspirator accountable for all drug transactions of which the conspirator was aware, or that he reasonably should have foreseen. *Id.*

 Applying these provisions, the United States Probation Officer found both Juan and Ramon responsible for 50–100 kilograms of cocaine. At the sentencing hearing, the government presented additional testimony from Edward Mauerman in support of this amount. Taking each defendant separately, the court concluded first that the government's evidence established that Ramon Castellanos was "directly responsible" for supplying the charged conspiracy with well in excess of 50 kilograms: "It is in the area of a hundred kilograms." The court referred specifically to the witnesses who testified to numerous direct deliveries made by Ramon: Darrell Whitlock, Edward Mauerman, and Donnie Davis. Turning later to Juan Castellanos, the court similarly referred to specific trial testimony regarding the scope of Juan's activities. The court detailed direct sales in which Juan took part, and then turned to the

activities of his brother which were "reasonably foreseeable" by him, including deliveries to couriers in which Juan assisted. The court ultimately concluded that the government had proven by a preponderance of the evidence that 50 to 100 kilograms were attributable to Juan. The evidence fully supports the court's conclusions.

### V. *Ramon's Separate Assignment of Error*

At the outset of this case, Ramon and Juan retained attorney Richard Mottweiler to represent them. Both Castellanos brothers stated in open court that they desired Mr. Mottweiler's representation and waived any conflict of interest. One year later, and approximately two weeks before their scheduled trial date, the Castellanos brothers filed a joint *pro se* motion to dismiss Mr. Mottweiler as their counsel, appoint them each a new attorney at government expense, and continue the trial date. They claimed a conflict as a result of Mr. Mottweiler sharing offices with the attorney representing Edward and Gary Mauerman, who had just "changed their tactics" (i.e., decided to cooperate with the government). Judge Reinhard held a hearing on the motion. Finding a potential conflict of interest, Judge Reinhard dismissed Mr. Mottweiler and ordered new counsel appointed for the Castellanos brothers. The court also granted their request for a continuance.

The court appointed Patrick Heaslip as counsel for Ramon Castellanos. Ramon immediately raised objection to Mr. Heaslip; he did not trust him because Heaslip had just discussed the case with government counsel and had conferred in the past with another codefendant. The court allowed Mr. Heaslip to withdraw and appointed Ramon a second counsel, Gordon Ring. Again, Ramon raised an immediate objection, this time because Mr. Ring had prior cases against the prosecuting United States Attorney's Office. The court rejected Ramon's objection. Mr. Ring soon followed up with a written motion to withdraw, repeating the same grounds. Judge Reinhard heard and denied the motion: "defendants who are fortunate enough to have appointed counsel are trying to sabotage that by wanting to pick ... their own attorneys, and I'm not going to allow that."

On June 24, 1992, about one month before the new trial date, Mr. Ring filed another motion to withdraw as Ramon's counsel, claiming that their relationship was deteriorating. The court again held a hearing, at which Judge Reinhard asked both Mr. Ring and Ramon to explain the reasons for Ramon's distrust. After considering the statements of all parties and counsel, the court ruled that there was "simply no basis for any distrust between the lawyer and the client in this case." The court concluded as follows:

I think the defendant is out to manipulate this case until he gets a lawyer that for some reason he feels that he's absolutely confident in. I happen to think that there's no reason why he can't feel absolutely confident with you, Mr. Ring. So, I'm going to deny the motion.

■■■■ Where, as here, the district court conducts an inquiry, this Court affirms the denial of a defendant's motion to substitute or withdraw counsel absent an abuse of discretion. *United States v. Zillges,* 978 F.2d 369, 371 (7th Cir.1992); *United States v. Hillsberg,* 812 F.2d 328, 333–34 (7th Cir.), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). The district court heard and considered Ramon's reasons for wanting new counsel; thus, the court's decision to deny Ramon's request was an abuse of discretion only if the "conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." *Zillges,* 978 F.2d at 372. *See also, United States v. Walker,* 9 F.3d 1245, 1251 (7th Cir.1993). Moreover, even if the district court somehow abused its discretion, reversal would not be warranted unless Ramon established that his counsel's performance was deficient and that he suffered prejudice as a result of that deficiency. *See Zillges,* 978 F.2d at 372–73; *United States v. Morrison,* 946 F.2d 484, 499 (7th Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 826, 121 L.Ed.2d 696 (1992).

Ramon has failed to establish deficiencies in Mr. Ring's performance and to show how such deficiencies "rendered the result unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell,* — U.S. —, —, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Zillges,* 978 F.2d at 372–73. In his brief, Ramon merely second-guesses Mr. Ring's strategic decisions and suggests that he should have called witnesses, without specifying the identity or potential testimony of such witnesses. Such meager allegations fall far short of the showing required under *Strickland.* We find that the district court acted well within its discretion in refusing to discharge Mr. Ring. The Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

## VI. *Juan's Separate Assignments of Error*

### A. *Denial of Juan's Severance Motion*

After he and Ramon had been severed from all other defendants, Juan filed a motion to sever his case from that of his brother. Among other things, Juan claimed that without a severance he would be prevented from calling Ramon as a witness and that Ramon would offer testimony exculpating Juan. The motion contained no supporting affidavit from Ramon or any other evidence, nor did Juan ever offer any such evidence. The motion was denied.

■■■■ To merit a severance, Juan was required to present "independent support"—such as an affidavit from Ramon—for his assertion that Ramon would have offered exculpatory testimony. *United States v. Boykins,* 9 F.3d 1278, 1290 (7th Cir.1993); *United States v. Lopez,* 6 F.3d 1281, 1285 (7th Cir.1993). Juan presented no such support to the trial court. In such circumstances, the district court's denial of severance was correct.

### B. *Failure to Grant Guideline Reduction*

■■■■ Juan also claims that the district court should have granted him a four-level reduction under Guideline § 3B1.2 for his "minimal" involvement in the conspiracy. Juan objected to the United States Probation Officer's suggested two-level enhancement for being an organizer or manager under § 3B1.1(c)—an objection in which the government joined. However, at no time did Juan raise the claim to the district court that his offense level should have been *reduced* under § 3B1.2. Thus, he has waived this claim on appeal. *See United States v. Cotts,* 14 F.3d 300 (7th Cir.1994). Further, the record is devoid of evidence to support such a reduction, given Juan's long-standing and

trusted role in the conspiracy; thus, the court's refusal to give the unrequested reduction was not plain error. *See id.; Olano,* —— U.S. at ——, 113 S.Ct. at 1779.

AFFIRMED.

UNITED STATES OF AMERICA,
*Plaintiff–Appellee,*

v.

DAVID BUFFINGTON, RAMON F. CASTELLANOS, and JUAN A. CASTELLANOS, *Defendants–Appellants.*

Nos. 92–2708, 92–3846, and 92–3847

**ORDER**

Sept. 8, 1994

On July 27, 1994, Defendant–Appellant, David Buffington, filed a petition for rehearing and Defendant–Appellant, Ramon F. Castellanos, filed a petition for rehearing and suggestion of rehearing en banc. On August 10, 1994, Defendant–Appellant, Juan A. Castellanos, filed .a petition for rehearing and suggestion of rehearing en banc. No judge in regular active service has requested a vote on the suggestions of rehearing en banc, and all of the judges on the panel have voted to deny rehearing. The petitions for rehearing are therefore DENIED.