In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-3190

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JULIO RICE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 484—**Robert W. Gettleman**, *Judge.*

_____

ARGUED SEPTEMBER 20, 2007—DECIDED APRIL 1, 2008

_____

Before CUDAHY, POSNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* We have rejected many challenges surrounding the felon-in-possession statute's interstate commerce requirement, and in this case we reject one more. The statute, 18 U.S.C. § 922(g)(1), requires that the government prove, among other things, that a defendant's possession of a firearm was "in or affecting commerce." Complicating matters somewhat, the indictment in this case charged instead that Rice's possession was "in *and* affecting commerce." (We have added the emphasis.) Seizing on this language, Rice maintains that the government needed, and failed, to prove that his possession of firearms was "in commerce." Because the

statute only requires proof that the firearms had moved across state lines at some point before the defendant's possession, a threshold indisputably satisfied here, we conclude that the requisite tie to interstate commerce has been satisfied. Rice's other challenges to his convictions and sentence are similarly without merit. Therefore, as we explain more fully below, we affirm the judgment of the district court.

## I. BACKGROUND

Julio Rice was charged in a five-count superseding indictment with: (1) unlawful possession of a firearm by a felon; (2) possession of a firearm having a removed, altered or obliterated serial number; (3) possession with intent to distribute a controlled substance; (4) possession of a firearm in furtherance of a drug trafficking crime; and (5) unlawful possession of a firearm by a felon. The first four counts concerned conduct that allegedly occurred on October 29, 2002. Count 5 charged that Rice possessed a firearm on January 12, 2003.

At the first trial, a jury convicted Rice of the conduct charged in Counts 1 and 2. The jury was unable to reach a verdict as to Counts 3, 4, and 5, and the district court declared a mistrial. The government then re-tried Rice on Counts 3, 4, and 5, and the second jury returned a guilty verdict on those counts.

Two separate incidents led to Rice's convictions. On October 29, 2002, two officers stopped the car in which Rice was riding. He left the car holding a handgun in one hand and a blue laundry bag in the other and ran into the building where he resided with his then-girlfriend. Inside the building, he threw the bag up the stairs and attempted to close the door behind him, but the two officers pushed

it open. The officers restrained Rice and found the blue laundry bag with a handgun next to it. The bag contained two additional handguns (including an Intratec Tec-DC9 semiautomatic handgun with an obliterated serial number), an empty safe, and three bags with a total of approximately two-and-a-half pounds of marijuana. The marijuana was divided into two one-pound bags and one half-pound bag. The officers found no other contraband.

Rice testified at trial and admitted that he had purchased the marijuana shortly before his arrest on October 29, 2002. He also admitted that he possessed the three firearms seized by officers that day. He further testified, however, that he did not intend to sell the marijuana and that he needed the handguns to protect himself from other gang members.

Other officers testified that on January 12, 2003, they saw the passenger in a Buick, later identified as Rice, toss a black object out the car window. One testified that he immediately recognized the object as a gun, heard a metallic "clink" as it hit the ground, and yelled out, "gun." The officers arrested Rice and found a loaded Bryco semiautomatic handgun about two to five feet away from the passenger side of the car.

On August 9, 2006, the district court sentenced Rice to 360 months' imprisonment. He now appeals, raising multiple challenges to his convictions and sentence.

## II. ANALYSIS

A.  Interstate Commerce and § 922(g)(1)

Rice's principal challenge on appeal is to his convictions for unlawful possession of a firearm by a felon in

violation of 18 U.S.C. § 922(g)(1). He maintains that the government failed to prove that he possessed any firearms "in commerce" and that his two § 922(g)(1) convictions cannot stand as a result. This challenge is not one to our subject matter jurisdiction, but is rather an argument that the government failed to prove all the elements necessary to sustain the § 922(g)(1) convictions. *See United States v. Wallace*, 280 F.3d 781, 784 (7th Cir. 2002).

Section 922(g)(1) provides in relevant part that a felon may not ". . . possess in or affecting commerce, any firearm or ammunition . . . ." The Supreme Court explained in *Scarborough v. United States*, 431 U.S. 563 (1977), that the phrase "in commerce or affecting commerce" in the predecessor to § 922(g)(1) indicated a desire to impose "no more than a minimal nexus requirement" on the possession prong of the statute. *Id.* at 577. Following *Scarborough*, we have held on numerous occasions that as long as a firearm moved across state lines at some point prior to the defendant's possession of it, the possession satisfies § 922(g)(1)'s "in or affecting commerce" requirement. *See, e.g., United States v. Williams*, 410 F.3d 397, 400 (7th Cir. 2005); *United States v. Bass*, 325 F.3d 847, 849 (7th Cir. 2003); *United States. v. Bell*, 70 F.3d 495, 498 (7th Cir. 1995); *cf. United States v. Skoczen*, 405 F.3d 537, 541 (7th Cir. 2005) (recognizing that conspiring to receive or possess stolen goods that were in interstate commerce in violation of 18 U.S.C. § 659 requires proof that the goods were in interstate commerce). In this case, the firearms at issue had all been manufactured outside of Illinois. In some instances years after the firearms first entered Illinois, Rice possessed them inside the state. This evidence was all the government needed to demonstrate that Rice possessed the firearms "in or affecting commerce."

This case presents a slight wrinkle, however. Although the statute speaks in the disjunctive, providing that a felon may not "possess in *or* affecting commerce" (emphasis added) any firearm, the indictment does not. Rather, Counts 1 and 5 in the indictment charged that Rice possessed the firearms "in *and* affecting commerce in that the firearms had traveled in interstate commerce prior to the defendant's possession of the firearms . . ." (emphasis added). The counts also detailed the make, model, and serial number of the guns Rice allegedly possessed (with the exception of one gun that the indictment alleged had an obliterated or altered serial number), along with the alleged dates of possession.

Rice maintains that the government's use of "and" instead of "or" in the indictment matters. He does not dispute that his firearms possession was "affecting commerce." But because the indictment uses the word "and," Rice contends that his convictions under § 922(g)(1) can only stand if the firearms he possessed were "in commerce" at the time of his arrest. And, he maintains, they were not in commerce at the time.

Where the difference would lie between possessing a firearm "in commerce" and possessing a firearm "affecting commerce" for purposes of § 922(g)(1) is less than clear. It is true that the Supreme Court has recognized a distinction between the phrases "in commerce" and "affecting commerce." *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (interpreting the Federal Arbitration Act and stating that words "involving" and "affecting" signal Congress's intent to exercise its commerce power to its fullest extent, while "the general words 'in commerce' and the specific phrase 'engaged in commerce' are understood to have a more limited reach"). In *Scarborough* itself, the

Court quoted one of its prior decisions to say that "Congress is aware of the 'distinction between legislation limited to activities "in commerce," and an assertion of its full Commerce Clause power so as to cover all activity substantially affecting interstate commerce.' " 431 U.S. at 571 (quoting *United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 280 (1975)). And, interpreting the felon-in-possession prohibition before it, the Court said it seemed "apparent that . . . by prohibiting both possessions in commerce and those affecting commerce, Congress must have meant more than to outlaw simply those possessions that occur in commerce or in interstate facilities." *Id*.

Drawing from these cases, Rice maintains that a distinction lies between possessing a firearm "in commerce" and firearms possession that merely "affects" commerce. A firearm cannot remain "in commerce" indefinitely, he contends. And because at least some of the firearms he possessed had entered Illinois years earlier, he maintains they were not "in commerce" at the time he possessed them. At some point, according to Rice, a firearm is no longer "in commerce," though he posits that a firearm can remain in commerce for some reasonable period of time after it enters the state and before it is acquired by a felon. It is unclear how Rice would have us measure that reasonable period of time, however, and we have recognized before that in the § 922(g)(1) context, "it would be difficult, if not impossible, to attempt to draw practical distinctions between the possession of firearms which have moved in interstate commerce recently, and the possession of firearms whose travels are distant in time." *United States v. Lewis*, 100 F.3d 49, 52 (7th Cir. 1996); *see also Am. Bldg. Maint. Indus.*, 422 U.S. at 277 ("The phrase 'in commerce' does not, of course, necessarily have a uniform meaning whenever used by Congress.").

We need not press further on this issue today. The statute itself is written in the disjunctive, and it does not require proof of the conjunctive. *See* 18 U.S.C. § 922(g)(1). When a statute lists alternate means of violation, the "general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any of the acts charged." *United States v. Durman*, 30 F.3d 803, 810 (7th Cir. 1994) (citing *United States v. Cusumano*, 30 F.3d 803, 810 (3d Cir. 1991) (citing *Turner v. United States*, 396 U.S. 398, 420 (1970))); *see also United States v. James*, 464 F.3d 699, 706 (7th Cir. 2006); *United States v. Jones*, 418 F.3d 726, 729-30 (7th Cir. 2005); *United States v. Bond*, 231 F.3d 1075, 1078 (7th Cir. 2000). "This rule extends to a trial court's jury instructions in the disjunctive in the context of a conjunctively worded indictment." *Durman*, 30 F.3d at 810. Although the indictment charged that Rice possessed firearms "in *and* affecting commerce," the jury instruction did not use the conjunctive. Rather, the jury was told that convictions on the unlawful possession counts required it to find "that the firearm possessed by the defendant had traveled in interstate commerce prior to the defendant's possession of it on that date." In other words, although the indictment charged that Rice possessed firearms in *and* affecting commerce, the jury was told it only needed to find that Rice's firearms possession fell within the broad reach of the statute's "in *or* affecting commerce" language in order to return guilty verdicts on the § 922(g)(1) counts. Rice acknowledges that his possession of the firearms "affect[ed] commerce" in that the firearms had traveled in interstate commerce at some earlier point. That is all the statute requires, and § 922(g)(1)'s interstate commerce requirement was satisfied in this case.

For the same reasons, the district court did not err when it declined to give the jury an instruction that Rice proposed stating in part: "the interstate commerce movement of a firearm does not necessarily cease when the firearm enters into another state. But, a firearm [sic] character of being a part of interstate commerce does not continue indefinitely after its transportation ends." The proposed instruction did not accurately recite the law, so there was no error in refusing to give it. *See United States v. Al-Shahin*, 474 F.3d 941, 947 (7th Cir. 2007).

B.   Motion to Sever and Sufficiency Challenges

Rice's other challenges to his convictions also lack merit. First, the district court did not abuse its discretion when it denied Rice's motion to sever Count 5 from the other counts. *See United States v. Rollins*, 301 F.3d 511, 517 (7th Cir. 2002) (denial of motion to sever reviewed for abuse of discretion). That count charged him with unlawful possession of a firearm on January 12, 2003, and Rice denied possessing the firearm charged in Count 5. Counts 1 through 4, in contrast, charged Rice with conduct only on October 29, 2002, and he admitted that he possessed the firearms charged in those counts.

A court may order separate trials on separate counts if the joinder of offenses in an indictment appears to prejudice the defendant. Fed. R. Crim. P. 14(a). A district court abuses its discretion in declining to order separate trials only when the defendant shows that the denial of the severance prevented him from receiving a fair trial. *United States v. Quilling*, 261 F.3d 707, 715 (7th Cir. 2001). In this regard, simply showing that separate trials may have given the defendant a better chance of acquittal is insufficient. *Id.*

Our decision in *United States v. Coleman*, 22 F.3d 126 (7th Cir. 1994), is instructive. There, we concluded that the district court did not abuse its discretion when it denied the defendant's motion to sever counts charging that he unlawfully possessed firearms, on different days, in violation of § 922(g)(1). *Id.* at 135. As it is here, the central issue in the case was whether the defendant possessed the firearms on the charged dates. The evidence as to each count was relatively "short and simple," and the district court instructed the jury to consider each count separately. *See id.* The district court did not abuse its discretion when it denied the motion to sever.

In addition, there was sufficient evidence to convict Rice on each count. First, we uphold his conviction for knowingly possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). The serial number that would have been found on the firearm's receiver had been obliterated, Rice cleaned his guns regularly, and Rice said it was important to ensure that any gun he carried was "clean," meaning that no crimes had been committed with it. From this evidence, the jury could have found that he knew the serial number on his Intratec Tec-DC9 was obliterated.

Next, the jury had sufficient evidence to find Rice guilty of possessing marijuana with the intent to distribute it. *See* 21 U.S.C. § 841(a)(1). It could have credited Lieutenant Robert Coleman's testimony that the two one-pound and one half-pound bags of marijuana Rice had in his bag with guns and a safe were distribution-level quantities, as well as Rice's girlfriend's testimony that she was not aware of him storing such quantities of marijuana in her apartment where he lived. The jury also heard Officer Pablo Vasquez's testimony that it is not common to

find scales or baggies with such quantities of marijuana because larger-level dealers generally do not break down marijuana into user quantities. The jury also could have disbelieved Rice's testimony that of the $4000 he had to his name in the three months after his release from jail, he spent $1500 of it on marijuana that was only for his personal use or to give to friends and hair cutting customers. *Cf.* 21 U.S.C. § 841(b)(1)(D)(4) (directing that "distributing a small amount of marihuana for no remuneration" is to be treated as possession offense). Although a jury could have believed Rice, and the first jury may have, the jury that convicted him was not unjustified in finding that he intended to sell the marijuana. *Compare United States v. Cormier*, 468 F.3d 63, 71 (1st Cir. 2006) (finding sufficient evidence that defendant intended to distribute marijuana and stating, "[t]he quantity of marijuana retained by [the defendant]—at least two pounds—although not dispositive, at least suggests that it may not have been intended only for personal use") and *United States v. Binkley*, 903 F.2d 1130, 1133 (7th Cir. 1990) (upholding conviction for conspiring to sell marijuana where defendant maintained three-fourths of a pound of marijuana he had purchased was for his personal use) *with United States v. Rein*, 848 F.2d 777, 784 (7th Cir. 1988) (noting that jury found defendant who tried to buy five pounds of marijuana guilty of attempting to possess marijuana, but not attempting to possess marijuana with the intent to distribute it).

Sufficient evidence also existed to find Rice guilty of carrying a firearm during and in relation to a drug trafficking crime on October 29, 2002, in violation of 18 U.S.C. § 924(c). Rice admitted that he loaded three guns before he left his sister's home that night, placed a loaded Glock

in his waistband before he went inside a restaurant, bought $1500 worth of marijuana at the restaurant, and then carried guns in a bag with the marijuana. The jury also heard Lieutenant Coleman's testimony that drug dealers often carry weapons for protection. The jury heard enough to convict on this count as well.

Finally, there was sufficient evidence to conclude that Rice possessed the gun that officers recovered a few feet from the car in which he had been riding on January 12, 2003. Two officers testified that they saw the passenger, later identified as Rice, in a car they had stopped toss a black object out of the car as the officers walked toward the car, and one immediately identified it as a gun. Both officers also testified that they heard a metallic sound as the object landed on the ground and that they saw the driver's hands on the steering wheel at that time. The jurors were entitled to believe the officers' testimony and to discredit the inconsistent testimony from Rice and Robert Favela, the car's driver. Rice testified that Favela threw the gun out the window, while Favela testified that neither he nor Rice had thrown a gun out of the car. Moreover, the jurors heard a tape-recorded conversation in which Favela asked Rice, "What . . . do you want me to tell them?" followed by Rice's answer that Favela should say that Rice did not have a gun and that the officers found it on the street. The jurors had ample reason not to believe Rice's story at trial, and sufficient evidence existed to convict him of possession of a firearm on January 12, 2003.

C.  Sentencing Challenges

Rice raises several challenges to his sentence. In our review of his sentence, we first consider whether the

district court committed any procedural error. *See Gall v. United States*, 128 S. Ct. 586, 598 (2007). If there was no procedural error, we then analyze the substantive reasonableness of the sentence using an abuse of discretion standard. *Id*.

### 1.   Base Offense Level

We begin with Rice's argument that the district court erroneously set his base offense level at 26. When Rice was sentenced in August 2006, U.S.S.G. § 2K2.1(a)(1) provided that if the offense involved a firearm described in 18 U.S.C. § 921(a)(30) (and other conditions were met), the base offense level was 26. One of the firearms Rice possessed on October 29, 2002 was an Intratec Tec-DC9.

Although § 921(a)(30) included the Intratec Tec-DC9 on the day Rice allegedly possessed a firearm of that model, § 921(a)(30) was repealed effective September 14, 2004. Rice argues that because § 921(a)(30) expired prior to his trial and sentencing, and U.S.S.G. § 2K2.1(a) depends on § 921(a)(30), then § 2K2.1(a)(1) of the Guidelines had no meaning at the time he was sentenced.[1] Our decision in *United States v. Simmons*, 485 F.3d 951 (7th Cir. 2007), however, forecloses this argument. In that case, we followed the lead of the Second and Tenth Circuits and concluded that even though § 921(a)(30) had been repealed, the Sentencing Commission intended that courts determine for purposes of § 2K2.1(a) whether the fire-

---

[1] The November 2006 version of the Guidelines removed the reference to 18 U.S.C. § 922(a)(30). Instead, U.S.S.G. § 2K2.1(a)(1) now references semiautomatic firearms capable of accepting a large capacity magazine.

arm used by a defendant qualified as a "semiautomatic assault weapon" under § 921(a)(30) at the time of the crime. *Id.* at 953-54 (citing *United States v. Roberts*, 442 F.3d 128, 129 (2d Cir. 2006); *United States v. Whitehead*, 425 F.3d 870, 871-72 (10th Cir. 2005)). As did the defendant in *Simmons*, Rice possessed the firearms while § 921(a)(30) was still in effect. Rice does not dispute that the Intratec Tec-DC9 met the requirements for a "semiautomatic assault weapon," and setting his base offense level at 26 was not erroneous.

### 2.   Career Offender Status

The district court also committed no error when it concluded that Rice was a "career offender" under U.S.S.G. § 4B1.1(a). Under that provision, a defendant is a career offender if he is at least eighteen years old at the time of the instant offense, the instant offense involved a controlled substance, and the defendant had two prior felony convictions for either a crime of violence or a controlled substance offense. The only issue in this case is whether Rice's previous Illinois felony conviction for aggravated discharge of a firearm was for a "crime of violence." To be a "crime of violence," the conviction first must be one that is punishable by a term of imprisonment of more than one year, U.S.S.G. § 4B1.2(a); there is no dispute that this requirement is met here. Next, the offense must be one that either: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *See id.*

When determining whether a prior conviction was for a "crime of violence," we "start—and usually will end—with the elements of the statute of conviction and the facts as stated in the charging document." *United States v. Newbern*, 479 F.3d 506, 508 (7th Cir. 2007); *see also Shepard v. United States*, 544 U.S. 13, 26 (2005) (applying Armed Career Criminal Act). Here, the conviction at issue was for aggravated discharge of a firearm in violation of 720 ILCS 5/24-1.2(a)(2). That provision makes it unlawful to knowingly and intentionally "[d]ischarge[ ] a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person." Consistent with that provision, the charging document alleged that Rice knowingly discharged a firearm in the direction of another person and that he knowingly discharged a firearm in the direction of a motor vehicle he knew to be occupied by another person.

Our decision in *Quezada-Luna v. Gonzales*, 439 F.3d 403 (7th Cir. 2006), guides us here. In that case, we had no trouble concluding that the Bureau of Immigration Appeals reasonably found that "[d]ischarg[ing] a firearm at or into a building he or she knows or reasonably should know to be occupied" under 720 ILCS 5/24-1.2(a)(1) was a "crime of violence" under 18 U.S.C. §§ 16(a) and (b). Substitute "vehicle" for "building" and the result is essentially the provision at issue in Rice's Illinois case. In addition, the definition of "crime of violence" in 18 U.S.C. § 16 nearly mirrors that in U.S.S.G. § 4B1.2(a), although the former requires that the conduct present a "substantial" risk of physical injury, while the latter requires only a "serious potential risk" of physical injury to another. We concluded in *Quezada-Luna* that discharging a fire-

arm into a building one reasonably should know to be occupied both presented a substantial risk of physical injury to another, and, consistent with the "common-sense notion that firing a gun is a use of physical force," that it had as an element the "use, attempted use, or threatened use of physical force against the person or property of another." 439 F.3d at 406. That logic applies with equal force here.

Rice points to *United States v. Jaimes-Jaimes,* 406 F.3d 845 (7th Cir. 2005), but that case does not help him. There, we held that a Wisconsin conviction for "discharging a firearm into a vehicle or building" did not support a crime of violence enhancement under U.S.S.G. § 2L1.2[2] because the Wisconsin statute made it a crime even where a person only should have realized that there *might* be a person inside the vehicle or building. As a result, we concluded that the statute did not require as an element the use, attempted use, or threatened use of physical force against another, and the conviction was not for a crime of violence. *Id.* at 851. In Rice's Illinois case, in contrast, the statute required proof that the defendant *know or should reasonably know* that another person occupied

---

[2]  Under U.S.S.G. § 2L1.2,

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

the vehicle. The charging document imposed an even higher standard, as it charged that Rice knew the vehicle was occupied. Discharging a firearm in the direction of another person or of a vehicle one reasonably should know to be occupied carries with it "a serious potential risk of physical injury to another" which is all that is required to constitute a crime of violence under § 4B1.2(a). *Cf. United States v. Hernandez-Rodriguez*, 467 F.3d 492, 495 (5th Cir. 2006).

### 3.   Reasonableness

We have considered the other allegations of procedural sentencing error Rice raised in his briefs. Finding no merit in them as well, we turn to his argument that his 360-month sentence is unreasonable. Rice's advisory Guidelines range was 360 months to life. He maintains that he should receive a lower sentence pursuant to U.S.S.G. § 5K2.13, which provides that a below-Guidelines sentence may be warranted if a defendant committed the offense while suffering from a "significantly reduced mental capacity." Although "[t]he concept of departures has been rendered obsolete in post-*Booker* sentencing", "the district court may apply those departure guidelines by way of analogy" when analyzing the factors in 18 U.S.C. § 3553(a). *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007).

A "significantly reduced mental capacity" means a significantly impaired ability to either "(A) understand the wrongfulness of the behavior comprising the conviction or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. n.1; *see also United States v. Roach*, 296 F.3d

565, 568 (7th Cir. 2002). At sentencing, the district court recognized that Rice had psychological problems (he had been diagnosed with adjustment disorder with depressed mood and personality disorder) but concluded that they did not rise to the level of a significantly reduced mental capacity, nor did they warrant a below-Guidelines sentence. The only medical report referenced in the record concluded that Rice did not exhibit symptoms of a severe mental disease or defect, and we find no error in the district court's conclusion that Rice sufficiently understood the wrongfulness of his behavior and that his psychological issues did not warrant a below-Guidelines sentence. The district court also considered the factors listed in 18 U.S.C. § 3553(a) when it considered which sentence to impose, and we do not find that any other factor warrants a conclusion that the sentence was unreasonable. As a result, we conclude that the district court did not abuse its discretion in imposing the sentence it did.

## III.  CONCLUSION

Rice's convictions and sentence are AFFIRMED.