NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 20, 2012[*]
Decided August 22, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-3877

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:03cr87-001 |
| JERRY JARRETT, *Defendant-Appellant*. | William C. Lee, *Judge*. |

## O R D E R

Jerry Jarrett was convicted by a jury of three counts of concealment money laundering, 18 U.S.C. § 1956(a)(1)(B)(i); one count of laundering more than $10,000 worth of criminally derived property, *id.* § 1957(a); and two counts of structuring financial transactions, 31 U.S.C. § 5324(a)(1). On appeal he primarily challenges the sufficiency of evidence for his convictions. We affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The background of this case is set forth in our prior opinion, *United States v. Jarrett*, 447 F.3d 520 (7th Cir. 2006). Jarrett is a former criminal defense attorney who was disbarred in the mid-1990s and reinstated in 1999. While disbarred, the jury found, he had helped launder drug proceeds for two cocaine dealers.

The government's case at trial was based largely on the testimony of these two dealers, Carlos Ripoll and Gregory Goode. According to the two men, Jarrett offered to cover up their drug profits by depositing the cash proceeds into the bank account of a small business he controlled and making it appear that the checks he gave back to them were investment returns on stock he had sold them. Ripoll gave Jarrett $67,000 in cash, which Jarrett in turn deposited into the business's bank account on 12 different occasions at several different bank locations; all but one of the deposits was less than $10,000. To create the impression that Ripoll had invested in his business, Jarrett drafted a backdated stock purchasing agreement and soon thereafter issued five separate checks from his business's account to Ripoll totaling about $55,000. The memo line on several of these checks stated "Return on Investment." Jarrett kept about $12,000 as a fee for the laundering.

A few months later, Jarrett laundered Goode's money, as he had for Ripoll. The deal proceeded the same way: Goode gave Jarrett $25,000 in cash, which Jarrett deposited into his business's account in four deposits, each less than $10,000; Jarrett drafted a backdated stock purchase agreement and returned $18,000 to Goode's car dealership in three checks, each labeled "Stock Investment Return"; and Jarrett kept $7,000.

After the government rested its case, Jarrett moved for acquittal on the basis that the government's evidence didn't establish (1) that the funds were drug proceeds; (2) that he designed the transactions to conceal the source of the money; or (3) that he intended to evade bank reporting requirements. The court denied the motion, concluding that the government had presented sufficient evidence to support the charges and that it was the jury's decision whether to credit the government's evidence. Jarrett also moved for acquittal at this time on the ground that the government had vindictively prosecuted him; the court asked Jarrett to submit a written motion on this matter.

After the jury returned a verdict against him, Jarrett renewed his motion on the ground of vindictive prosecution. The district court granted the motion, explaining that Jarrett had shown that the government prosecuted him because he had successfully represented a high-profile defendant. On appeal we reversed the court's judgment because Jarrett had not provided clear evidence that the decision to prosecute him was motivated by vindictiveness. *Jarrett*, 447 F.3d at 526. We ordered the indictment and verdict reinstated and remanded the case to the district court with the instruction that Jarrett be able to raise

other appropriate challenges to his convictions. *Id.* at 531. Once the district court reinstated the verdict, Jarrett filed a second motion for acquittal in which he renewed his sufficiency-of-the-evidence challenge and newly challenged the definition of "proceeds" underlying his laundering convictions. The district court denied this motion for being untimely.

On appeal Jarrett challenges the reinstated jury verdict, again challenging the sufficiency of evidence for his money-laundering convictions. He argues that the statements of Ripoll and Goode, while suggesting that the money turned over was drug proceeds, fell short of explicit admissions.

The government, however, provided sufficient evidence from which the jury could conclude that the funds Jarrett laundered were proceeds from drug sales. For all four of Jarrett's money-laundering charges, the government had to show that the funds used were proceeds derived from an unlawful activity, in this case drug dealing. 18 U.S.C. §§ 1956(a)(1)(B)(i), 1957(a); *United States v. Haddad*, 462 F.3d 783, 791 (7th Cir. 2006); *United States v. Griffin*, 84 F.3d 912, 926–27 (7th Cir. 1996). The testimony of Ripoll and Goode reflect that the funds were drug proceeds: Ripoll stated that "The only money I had was drug money, so that's the only money I knew to give him"; and Goode stated that the purpose of the transactions was "to bring it in cash to clean up the money or the drug proceeds, the money that I profited from selling drugs."

Jarrett also argues that for the three concealment-laundering counts, the government failed to present sufficient evidence that he intended for his transactions to disguise the owner of the funds. He contends that the government needed to prove every way of committing money laundering alleged in the indictment because, according to the indictment, he knew that the transaction was designed to disguise "the nature, location, source, ownership *and* control of the proceeds of said specified unlawful activity."

But the government wasn't required to prove every way of committing money laundering alleged in the indictment. If a statute provides for several alternative ways of committing a crime, an indictment may charge more than one way of committing the crime, and the government need prove only one of those ways to the jury. *United States v. Rice*, 520 F.3d 811, 817 (7th Cir. 2008); *United States v. Durman*, 30 F.3d 803, 810 (7th Cir. 1994). That is the case here because the statute requires the government to prove only one of several ways of committing concealment money laundering—by intending to disguise "the nature, the location, the source, the ownership, *or* the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i) (emphasis added). And the government presented sufficient evidence to prove an intent to conceal the illegal nature of the funds by showing that Jarrett carefully structured transactions to avoid attention, deposited illegal profits into the bank account of a legitimate business, and falsified investment documents.

Jarrett next argues that the government did not present sufficient evidence to support his structuring convictions, particularly an intent on his part to avoid reporting requirements. This argument is unpersuasive. To convict Jarrett of structuring financial transactions, the government had to present evidence that he knew about the reporting requirements that apply when a patron deposits $10,000 or more in cash and structured his transactions to evade those requirements. 31 U.S.C. § 5324(a)(1); *United States v. Cassano*, 372 F.3d 868, 878 (7th Cir. 2004). This showing can be met by evidence that a defendant, despite inefficiency and inconvenience, deposited cash in small amounts that avoid the reports. *See United States v. Van Allen*, 524 F.3d 814, 820 (7th Cir. 2008); *United States v. Davenport*, 929 F.2d 1169, 1172–73 (7th Cir. 1991). Ample evidence here reflects that Jarrett meant to avoid the reporting requirement. According to Ripoll, Jarrett said that he would not deposit all $67,000 of Ripoll's money at once to avoid raising "red flags," before then making 11 deposits small enough to avoid the reporting requirement. And Jarrett behaved similarly with Goode's money: rather than depositing Goode's $25,000 all at once, Jarrett deposited it on four different occasions, always in amounts small enough to avoid reporting.

Jarrett's remaining two arguments go nowhere. First, he asserts that the government failed to show that the funds he laundered were net proceeds instead of gross receipts, noting that courts have interpreted "proceeds" as used in other parts of the money-laundering statute to mean net proceeds. Jarrett did not raise this argument until his second (and untimely) motion for acquittal, so he has forfeited it and we review for plain error. *United States v. Buchmeier*, 255 F.3d 415, 419 (7th Cir. 2001). But any error on this point cannot be not plain because the question remains open whether the interpretation pressed by Jarrett applies to concealment money laundering. *United States v. Hosseini*, 679 F.3d 544, 552 (7th Cir 2012); *United States v. Aslan*, 644 F.3d 526, 547 (7th Cir. 2011).

Second, Jarrett argues that the indictment was constructively amended by a jury instruction. He contends that the jury instruction for concealment money laundering amended the indictment in that it required the government to prove that Jarrett structured the transaction in order to disguise "the nature, the location, the source, the ownership, *or* the control of the proceeds of the distribution of controlled substances," whereas the indictment had used the conjunctive "and" instead of disjunctive "or." But this argument is a nonstarter because a jury instruction may track a statute recognizing commission of a crime in *one* of several ways, even if the indictment alleged that the defendant committed the crime in *all* of those ways. *See Rice*, 520 F.3d at 817; *Durman*, 30 F.3d at 810.

AFFIRMED.